N. Chris Jorgensen, Francis J. Curtis, Trustee in Bankruptcy for Brokers Insurance Agency, Inc., E. Keith Bowers, Doing Business as Ace Insurance Agency, and M. J. Law, Appellants, v. Russell Baker, John C. McKenzie and Dwight Hightower, Individually, and as Copartners, Doing Business as Baker, McKenzie and Hightower, Appellees.

**Gen. No. 47,407.**

First District, First Division.

March 23, 1959.

Rehearing denied May 12, 1959.

Released for publication May 13, 1959.

197

Gale L. Marcus, of Chicago (I. Harvey Levinson, Melvin E. Levinson, of counsel) for plaintiffs-appellants.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for defendants-appellees.

JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal by the plaintiffs from an order dismissing their third amended complaint.

The complaint has eleven counts. Three are for money had and received; the others are for fraud and deceit. The plaintiffs, who were insurance agents and brokers, allege that in the early months of 1950 they were induced to place insurance risks with the defendants, who were engaged as insurance carriers under the name of London, Amsterdam and Zurich Assurance Group. They aver the defendants issued certificates of insurance but gave no protection to certificate holders and refused to pay claims when they arose; that the plaintiffs had to make these good, and had to return premiums to the insured, under compulsion of the Insurance Department of the State of Illinois.

The amended motion to dismiss is under Sections 45 and 48 of the Civil Practice Act, Ill. Rev. Stat. 1957, Chap. 110. It raises the general objection that the complaint does not state a cause of action and that it is replete with conclusions and immaterial allegations. It raises the particular objection that the suit of the Brokers Insurance Agency, Inc., is barred by the statute of limitations.

The decisions on these objections are two of the issues before us. The third is the additional reason given by the court for dismissing the complaint, which was that the individual plaintiffs were particeps criminis with the defendants. Because of their length we will not set forth either the complaint or the mo-

tion. The specific allegations which are alleged to be fraudulent are:

"A. That the Assurance Group had been properly incorporated, was validily existing and capable and able to properly accept fire and casualty insurance risks.

"B. That the Assurance Group was at said time over three years old.

"C. That the Assurance Group was capitalized at Two Hundred fifty thousand dollars ($250,000) and had assets in excess of One Million Dollars ($1,000,-000).

"D. That the Assurance Group had standards of solvency and management meeting the requirements necessary for the protection of policyholders in accordance with Section 445 of the Illinois Insurance Code of 1937 (Ill. Rev. Stats., 1949, c. 73, sec. 1057).

"E. That the Assurance Group had adequate assets, resources and reserves to pay all claims promptly as presented and proved.

"F. That the Assurance Group had established a Two Hundred thousand dollar ($200,000) Trust Fund in the State of Illinois, and had adequate assets, resources and reserves to thereafter increase its local deposits as needed or required by the Statutes of Illinois to protect all policyholders in Illinois."

The complaint charges that these were material representations and were untrue; that the defendants knew them to be untrue and made them to induce the plaintiffs to place insurance with the defendants; that the plaintiffs relied upon them, were deceived and defrauded thereby and suffered monetary loss and were injured in their businesses and reputations as well.

The allegations of a complaint must state all essential information together with the elements necessary to constitute the cause of action. It should do this clearly and concisely. It must avoid, on the one

200

hand, generalities, and, on the other, evidentiary facts. This is not always easy to do; a pleader often faces the dilemma of stating too little or too much. The plaintiffs seem to have had this difficulty. One of their earlier complaints was objected to because it pleaded evidence. The record suggests that in an effort to meet the criticism of the judges who sustained previous motions to dismiss, details were eliminated, only to face the opposite objection that too few were included. The progressive Civil Practice Act of Illinois recognizes that the purpose of pleadings is to inform the opposite party and the court of the nature of the action and the facts upon which it is based. It provides that pleadings shall be liberally construed to the end that controversies may be decided upon their merits. Ill. Rev. Stat. 1957, Chap. 110, Sec. 33(3). It also makes it easy for a party to acquire more information if it is thought a pleading is lacking in specific facts. A bill of particulars can be obtained upon notice. Sec. 37.

■■ In an action for fraud and deceit it is incumbent upon a plaintiff to show representation, falsity, scienter, deception and injury. Foster v. Oberreich, 230 Ill. 525; Johnston v. Shockey, 335 Ill. 363. The plaintiffs have done so in this case. They plead ultimate facts upon which the essential allegations rest. We are of the opinion that this complaint states a cause of action and does so in terms which are adequately clear and definite.

■ In the specific averment of fraud designated as "F," the charge is: "That the Assurance Group had established a . . . trust fund." The words "had established" were used in the last two complaints, whereas the words "would establish" were used in the first two. The prior contradictions, it is claimed, have the force of judicial admissions and bind the plaintiffs. Although this objection has been argued extensively

201

in the defendants' brief, it was not mentioned in their amended motion to dismiss; it was not before the motion judge and is not properly before this court. This objection had been presented in a previous motion to the judge who dismissed this complaint. In overruling it he said:

"I don't think there is any merit at all in your contention that the inconsistencies in the pleadings justify a ruling now. Inconsistent pleadings such as these can be resorted to as evidence when the case goes to trial, but that's the only advantage you can take of it."

█ The particular objection in reference to Brokers Insurance Agency, Inc., and its successor plaintiff, Francis J. Curtis, trustee in bankruptcy for Brokers, is brought under Sec. 48(1)(e) of the Civil Practice Act: "That the action was not commenced within the time limited by law." Supporting affidavits accompany the motion. The cause of action arose early in 1950. The statute of limitations is five years. Ill. Rev. Stat. 1957, Chap. 83, Par. 16. The suit was started August 4, 1952, within the five-year period. However, as the motion contends and the exhibits substantiate, at the time the suit was filed the plaintiff, a corporation, was in default in the payment of its state franchise tax due July 1, 1952. Ill. Rev. Stat. 1957, Chap. 32, Par. 157.142 provides: "No corporation required to pay a franchise tax . . . shall maintain any action . . . until all such franchise taxes . . . have been paid in full." It has been held that the failure to pay this tax precludes a corporation from either instituting or maintaining a legal action. Shore Management Corp. v. Erickson, 314 Ill. App. 571. Therefore, at the time this complaint was filed Brokers had no right to commence a suit in the courts of Illinois.

The first question to arise is whether starting the suit tolled the statute of limitations. No Illinois case

has come to our attention in which this precise point was considered. The problem has been before the courts of some other states, and their opinions are to the effect that filing an action which could not be validly instituted does not toll the statute. Western Electrical Co. v. Pickett, 51 Col. 415, 118 P. 988; Cleveland v. Gore Bros., 14 Cal.App.2d 681, 58 P.2d 931. We are of the same opinion. Brokers did not stop the running of the statute of limitations by filing a complaint which, under the law of our state, it had no right to file.

The next question is, what is the effect of a later payment of the tax if the statute of limitations has run between the filing of the suit and the date of the payment? Our courts have not had occasion to decide this question. It arises here because in September 1957, Brokers paid its taxes for the years of 1951 to and including 1957. It had been dissolved in 1954 for the nonpayment of taxes and the order of dissolution was vacated, also in September 1957, restoring its corporate powers. The plaintiff contends that its rights in the interval had been suspended only, that their revival in 1957 was retroactive to 1952 and that it is empowered to proceed with this case. Our courts have held that if a corporation, which is delinquent in the payment of franchise taxes, has started a suit, it may, by subsequent compliance with the statute, continue the prosecution of that suit. Sternberg Dredging Co. v. Estate of Sternberg, 351 Ill. App. 514; Sheffield Steel & Iron Co. v. Jos. Joseph & Bros. Co., 238 Ill. App. 45. This is true also of some other states. International Trust Co. v. Leschen & Sons Rope Co., 41 Col. 299, 92 P. 727; Hall v. Citizens Nat. Trust & Savings Bank of Los Angeles, 53 Cal.App.2d 625, 128 P.2d 545. But in this case the five-year limitation had expired in 1955. If Brokers had paid its taxes and had had its corporate status restored before the expiration

of the five-year period, it may have come within the rule set out in the above cases; but it did not, and we believe its effort in 1957 to get within the rule was futile as well as belated. We hold the rule does not apply when the statute of limitations has run before a delinquent corporation reacquires the right to use the courts of our state. To hold otherwise would be to ignore the effect and purpose of the statute. Western Electrical Co. v. Pickett, supra; Cleveland v. Gore Bros., supra.

■ The corporate plaintiff marshals several additional reasons why its complaint should not be dismissed. Among them is the one that the objection to its capacity to sue, not having been made until June 1957, came too late. The plaintiff knew of its own default and it is difficult to understand how it could have been misled by the delay. Its argument also seems to be that a motion of this kind is in the nature of a plea in abatement and should be raised at the first opportunity. Among its authorities it cites Keokuk & H. Bridge Co. v. Wetzel, 228 Ill. 253 (1907). This is the leading case on the point and has been cited in other opinions, Gilmer Creamery Ass'n v. Quentin, 142 Ill. App. 448 (1908); New York Bond & Mortgage Co. v. McWilliams, 253 Ill. App. 404 (1929). The Keokuk case, however, does not support the plaintiff's position. It makes a distinction between a motion directed against a plaintiff corporation and one made in its own behalf by a defendant corporation. It holds that the former is a plea in bar and the latter is a plea in abatement:

"There is some apparent confusion in the reported decisions on this question. We think, however, upon principle and authority, a plea denying that the plaintiff is now or ever has been a corporation is a plea in bar, as the sustaining of such plea would defeat the action. It would seem, however, that when a defend-

ant files a plea in which it denies it is now or ever has been a corporation, it should give the plaintiff a better writ by pointing out to him its true character,—that is, whether it is a joint stock company, a partnership or other aggregation of individuals, to the end that the plaintiff may amend and thereby avoid the abatement of his action, and that such plea is a plea in abatement."

We have found one case which supports the plaintiff, Romano & Co. v. Baird & Warner, Inc., 262 Ill. App. 165 (1931). In the Romano case the defendant had made a motion to deny the plaintiff corporation access to the court because it had not paid its franchise taxes. The Appellate Court found that the defendant had failed to prove this and further held that the motion was in the nature of a plea in abatement and should have been made earlier than it was. No authorities were cited. We have read the briefs in the Romano case and find that neither the Keokuk case, nor any case following the distinction it made, was called to the court's attention. In fact, the defendant-appellant's brief cited no cases at all and the plaintiff's but one. Because the contrary decisions were not before the court, we do not believe the Romano case has the weight it otherwise might have. It is our conclusion that the Keokuk case is controlling and that the defendants' objection was raised in apt time.

 Other reasons advanced against dismissal concern Curtis who, in May 1957, intervened as plaintiff. In August 1952, a month after starting this suit, Brokers filed a petition in bankruptcy. It was adjudicated a bankrupt in October and Curtis was appointed the trustee in December, the same year. It is not disputed that all the assets of Brokers, including the claim against the defendants, vested in Curtis as trustee. Sec. 70(a) Bankruptcy Act, 11 U. S. C. sec. 110(a) 1952. Under sec. 11(e) of this act,

"A . . . trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State Law had not expired at the time of the filing of the petition in bankruptcy."

Curtis did not comply with this section. If he had, the proceedings would have tolled the statute; the objection that Brokers had no right to use the court would not have applied to him.

 The plaintiff takes the position that it was not governed by sec. 11(e), but by sec. 11(c), which is:

"A . . . trustee may, with the approval of the court, be permitted to prosecute as . . . trustee any suit commenced by the bankrupt prior to the adjudication, with like force and effect as though it has been commenced by him."

The plaintiff argues that sec. 11(c) has been construed as authorizing alternative ways for a trustee to proceed. We have seen no case which says that this section need not be followed if a trustee wishes to prosecute a suit as trustee. If he does not, there are different courses open to him. One is to do nothing about a pending case. Paradise v. Vogtlandische Maschinen-Fabrik, 99 Fed.2d 53. The second alternative is to arrange for the attorney, who represents the bankrupt, to continue on with the pending suit. This course has been mentioned in cases where there has been a dispute over attorneys' fees. In re Prudence Co., Inc., 96 Fed.2d 157. This apparently is the alternative Curtis chose after being appointed trustee. In an affidavit filed in answer to the defendants' motion to dismiss, Curtis said that in January 1953, he directed the attorney for Brokers to continue the prosecution of

206

the present suit. This arrangement did not bring Curtis into court, did not make him the plaintiff and did not comply with sec. 11(c). The statute is unambiguous and its direction must be literally followed if a trustee is to prosecute a suit as trustee. Although he was the party in interest, Curtis did not obtain Federal Court permission to enter this case until December 1956, and he was not substituted as plaintiff in the Superior Court until May 1957. In order for Curtis to have tolled the statute of limitations it was necessary for him to have entered the case before the statute had run. This he did not do.

Another contention is that the Illinois Statute of Limitations must yield to the Bankruptcy Act; that the state cannot deny access to its courts by a trustee because the bankrupt has not paid its franchise tax, and hence sec. 142 of the Illinois Business Corporation Act, Chap. 32, Ill. Rev. Stat. 1957, restricts the operation of the Federal Bankruptcy Act. We do not believe there is merit to this argument. The trustee entered this case in May 1957, without Brokers having paid the tax, and he could have done so prior to 1957. The problem as to the trustee is not the payment of the tax, but his failure to follow the provisions of the Bankruptcy Act and his failure to actually become the plaintiff within the applicable period of limitations.

Several other points are made. These pertain to Par. 157.94, Chap. 32, and to Sections 46(2) and 54(1), Chap. 110, Illinois Rev. Stat. 1957. We have examined these points carefully but do not think they warrant full discussion here. The plaintiff endeavors to stretch these statutes to cover the facts of this case. If we were to give the statutes the interpretation the plaintiff does, we would be distorting their meaning and purpose. We conclude that the court was correct in sustaining the amended motion to dismiss in so far as it applied to the plaintiff Brokers, and its trustee, Curtis.

207

■ There remains the third and final issue. After the motion to dismiss was presented, briefs were submitted to the motion judge. Later, when he announced his decision, he injected a reason for dismissing the complaint which had not been raised in the pleadings, arguments or briefs. With the perspicacity which was so characteristic of Judge Fisher, he discerned a possible barrier to the plaintiffs' case, which had not been apparent to others. He stated that the plaintiffs,

". . . stood in a peculiar relationship to the policyholders. They owed them a duty to ascertain at their own risk whether or not this was such a company as could do business here legally and was in a position to meet its obligations . . . at least to the minimum extent required by law."

He said it appeared to him from the third amended complaint that the plaintiffs were particeps criminis with the defendants and, therefore, could be granted no relief. This is an objection which involves a question of public policy and it may be raised sua sponte by the court. First Trust & Savings Bank of Kankakee v. Powers, 393 Ill. 97. However, we believe that this objection should not be raised and a case dismissed because of it, unless the violation of public policy is established conclusively by the pleadings, or unless it is disclosed and substantiated by evidence.

The order dismissing the complaint as to Brokers Insurance Agency, Inc., is sustained. The order dismissing the other counts of the complaint is reversed. The cause is remanded for futher proceedings consistent with the views herein expressed.

Affirmed in part, reversed in part and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.