Elsberry Equipment Company, a Corporation, Plaintiff-Appellant, v. Hickman Short, et al., Defendants-Appellees.

Gen. No. 10,641.

Fourth District.

October 27, 1965.

Rehearing denied November 22, 1965.

H. David Condron, of Quincy, J. Andy Zenge, Jr., and Dennis W. Smith, both of Canton, and Gilbert K. Hutchens, of Carrollton, for appellant.

Robert H. Mehroff, of Carrollton, for appellees.

TRAPP, J.

In plaintiff corporation's action to recover upon a note, the trial court entered judgment for the defendants. Motions to vacate the judgment, or, in the alternative, for a new trial were denied. Upon appeal, plaintiff asks the reversal of such judgment and that judgment be entered for the plaintiff. The defendants cross-appeal praying that the judgment of the trial court be affirmed, or, in the alternative, that the order

of the trial court denying defendants' motion to dismiss the cause of action be reversed and the cause of action dismissed.

The plaintiff is a Missouri corporation with its principal office in Elsberry, Lincoln County, Missouri. The defendants, Newton Short and Laura Short, conceded to be accommodation makers on the note, are residents of Greene County, Illinois. The defendants, Hickman Short and Ann M. Short, are residents of Missouri.

It is agreed that the roster of stockholders in plaintiff corporation is limited to the following named persons: The defendants, Newton Short and Laura Short, and I. L. Parks, his wife Gladys Parks, R. E. Parks, and his wife Margaret Parks, all of whom reside in Missouri.

On October 20, 1960, the shareholders of plaintiff corporation entered into the following agreement (hereinafter referred to as the shareholders' agreement):

"Agreement for Sale and Purchase
of Corporate Shares of Elsberry
Equipment Company.

This agreement, made this 20th day of October, 1960, by and between R. E. Parks and Margaret Parks, his wife, of Lincoln County, Missouri, and I. L. Parks and Gladys Parks, his wife, of St. Louis County, Missouri (hereinafter called 'Parks'), and N. H. Short and Ann Short, his wife, of Lincoln County, Missouri (hereinafter called 'Shorts'), Witnesseth, That:

Whereas, Parks and Shorts are the shareholders of the Elsberry Equipment Company, a Corporation, which is engaged in the farm implement,

338

automotive sales and service, service station and farming businesses at and in the vicinity of Elsberry, in Lincoln County, Missouri; and,

Whereas, Parks desire to withdraw from said businesses and Shorts desire to continue the farm implement and service station phases of said businesses but do not wish to continue the automotive sales and the general farming phases thereof; and,

Whereas, it is the intention of the parties hereto that the Shorts will acquire the shares of stock of Parks in the corporation as of December 31, 1960, after the corporation has liquidated or substantially liquidated such of its assets as have been devoted to automotive sales and farming operations, pursuant to an agreement between the parties hereto and the corporation executed simultaneously herewith, it is therefore agreed that:

1. The cash of the corporation, not required for outstanding indebtedness, as of December 31, 1960, will be divided, $2/3$ to Parks and $1/3$ to Shorts. Shorts note to the corporation will be assigned to Parks after giving Shorts credit for $1/3$ of the principal due on the note as his interest in it. Leases of business building and site will be assigned to Shorts.

2. Shorts will purchase the shares of stock of the corporation owned by Parks as of December 31, 1960, for $75.00 ($2/3$ of the cost of incorporating, as shown on the corporation's books), provided that the John Deere Company of St. Louis, Missouri, and the J. D. Streett Company of St. Louis, Missouri, have approved the continued dealership by the Shorts or by the Elsberry Equipment Company operated by the Shorts, in handling John Deere Equipment and parts, and

service station merchandise marketed by J. D. Streett Company.

3. Such other assets of the corporation as may not have been liquidated on December 31, 1960, shall be divided, in kind, ⅔ to Parks and ⅓ to Shorts, if they can then agree on the division. If they cannot agree, the Corporation will set such unliquidated assets up in a separate account for liquidation, and monthly remit to Parks ⅔ and Short ⅓ of the proceeds of such liquidation. For that purpose, Parks shall be considered agents of the corporation to participate in effecting the complete liquidation, but neither Parks, Short, or the Corporation shall be compensated for completing the liquidation.

4. Parks agree that they will not engage in the retail farm implement or petroleum products business within a fifty mile radius of Elsberry, Missouri, for five years after the date of this agreement.

5. Parks and Shorts further agree that if some liability of the corporation incurred prior to the date of this contract which is not shown on the corporate records, shall be established prior to the payment in full of Short's promissory note to Parks, that Parks will bear their two thirds of said liability and that in the event it is not paid to the corporation by Parks, Short shall have the right to deduct two thirds of said liability from the payments due under his note. Parks shall, however, not be liable to Shorts, or to the corporation, for any liabilities of the corporation as of December 31, 1960, shown on the books of the corporation, or for any obligations incurred by

340

Short in the operation of his business, after the date of this contract.

In Witness Whereof, the parties hereto have set their hands by the day and year first above written.

> (s) Hickman Short,
> (s) Ann Short,
> (s) R. E. Parks,
> (s) Margaret Parks,
> (s) I. L. Parks,
> (s) Gladys E. Parks."

On the same date, plaintiff and the defendants entered into the following agreement (hereinafter referred to as the corporate agreement):

> "Agreement for Sale and Purchase
> of Certain Corporate Assets of
> Elsberry Equipment Company.

This Agreement, Made this 20th day of October, 1960 by and between Elsberry Equipment Co., a Corporation, Seller, and N. H. Short and Ann Short, his wife, Buyers, Witnesseth:

1. Seller agrees to sell to Buyers, and Buyers agree to purchase of Seller the certain assets of Seller described in Exhibit A, hereto attached upon the following terms and conditions: The John Deere parts shall be purchased at IGN cost to Seller, Buyers shall also pay to Seller the prepaid freight charges on John Deere whole goods, calculated at carload rates. Petroleum products and tires, and allied equipment, shall be purchased at the costs thereof paid by Seller.

The remainder of said items shall be purchased for $10,500.00.

2. The parties agree that within three days after the total price, in dollars, has been determined, and after this agreement is approved by the John Deere Company and J. D. Streett Company of St. Louis, Missouri, Buyers will pay Seller $15,000.00 thereof, in cash, and execute and deliver to Seller their promissory note for the balance of the total price, said note bearing six per cent interest from January 1, 1961. Said note shall be signed by Newton Short and Laura Short, his wife, of Greenfield, Illinois, as accommodation makers. The interest shall be payable in monthly installments, beginning February 1, 1961, and the principal shall be paid in 10 equal consecutive annual installments beginning on November 1, 1961, with the privilege of prepayment, and acceleration in the event of default.

3. Seller agrees that upon said payment of $15,000.00 and delivery of said note, it will promptly proceed to liquidate its remaining assets and pay all outstanding indebtedness; that Seller will continue to employ R. E. Parks, for $100.00 per week, during the remainder of 1960, to conduct such liquidation. Buyers agree to cooperate with Seller in the collection of Seller's accounts receivable and liquidation of Seller's business.

4. Seller agrees to hold Buyers harmless from any liability incurred by Seller in connection with the purchase of the items hereby agreed to be sold to Buyers, and in connection with the operation of Seller's business, and Seller shall not be liable for any obligations incurred by Buyers in the operation of Buyer's business after the date hereof.

In Witness Whereof, Seller has caused these presents to be duly executed and Buyers have hereunto set their hands, the day and year first above written.

Elsberry Equipment Co.,
By (s) Hickman Short,
 President,
 Seller,
 (s) Seller—R. E. Parks,
 Sec.—Treas.,
 (s) Hickman Short,
 (s) Ann Short,
 Buyers.

Approved
I. L. Parks, Director (s)."

The note, dated November 29, 1960, is in the principal sum of $26,830, and recites that it is for value received and payable to the order of "Elsberry Equipment Company, a Corporation of Elsberry, Missouri." In addition to alleging the making of the note, the complaint alleges that $1000, has been paid upon the principal, and that interest has been paid to November 1, 1961, that the note is in default for more than thirty days and that plaintiff is still the owner of the note. The note contains provisions for waiver of demand, reasonable attorneys' fees with provisions for prepayment, but the detailed provisions of the note do not appear relevant to the issues in this case.

The trial court denied defendants' motion to dismiss the complaint to which copies of the shareholders' agreement and the corporate agreement were attached, the defendants alleging by affidavit the several matters and things hereinafter set forth as the defendants' answer. The answer filed by the defendants alleged complete or partial failure of consideration, denied that the plaintiff is the owner of the note, or is the proper party to bring suit, and alleged further that Hickman Short and Ann M. Short were to receive credit of ⅓ upon the note prior to its assignment to the corporate shareholders; that the shares of stock

in plaintiff corporation had not been sold and transferred to Hickman Short and Ann Short; that there had been a failure to liquidate certain assets and to divide the unliquidated assets giving a ⅓ share to the defendants, Hickman Short and Ann M. Short; that there was misrepresentation as to the nature and extent of the assets of the corporation, and that certain assets of the corporation were mortgaged, but that such fact was not disclosed to Hickman Short and Ann M. Short.

Plaintiff's reply to defendants' answer denies that there was a complete or partial failure of consideration, denies the allegation that the plaintiff was not the proper party to bring suit on the note; alleges that the shareholders' agreement and the corporate agreement constituted no defense to the action on the note; alleges that the plaintiff is not a party to the shareholders' agreement and that such agreement does not constitute a defense, and plaintiff denies the allegations of failure to liquidate and divide assets, and the allegation of misrepresentation to the defendants concerning the assets.

At the hearing upon the issues, R. E. Parks testified that he was secretary-treasurer of the plaintiff corporation and that he had held that office on November 29, 1960, the date of the note. He identified the note in issue, and testified that the corporation was the owner of such note, and that "it has been in my possession since it was delivered to the Elsberry Corporation Company." On cross-examination, he testified that the shareholders in the corporation are the same as they were on October 20, 1960. The note in issue was admitted in evidence without objection.

Plaintiff urges that the trial court erred in admitting into evidence both the "corporate agreement" and the "shareholders' agreement." He points out that the

344

corporation was not a party to the "shareholders' agreement," that the note contains no reference to either of said agreements, that the note is not contemporaneous or simultaneous in time with either agreement, and that there is a complete lack of evidence connecting the note with the respective agreements. As an alternative basis for appeal, plaintiff contended that assuming for purposes of argument that the said agreements should be admitted into evidence, the note was still valid and enforceable, it being urged that the consideration for the note was the promise of the plaintiff to do certain acts and that the failure to perform the acts cannot be considered a failure or a partial failure of the consideration for the note, citing Gage v. Lewis, 68 Ill 604; Smysor v. Glasscock, 256 Ill App 29; and Vella v. Pour, 329 Ill App 355, at p 360, 68 NE2d 631. In short, plaintiff urges that it should recover the full amount of the note and that the defendants should be required to sue the corporation as:

> "Defendants' remedy is for breach of the agreement by plaintiff rather than a defense of a failure of consideration."

It does not appear to be denied that the corporate agreement and the shareholders' agreement are contemporaneous: they bear the same date, some individuals executing the shareholders' agreement participated in executing the corporate agreement, and the shareholders' agreement recites that the named persons are the shareholders of the corporation and that such persons will do certain acts on December 31, 1960:

> ". . . pursuant to an agreement between the parties hereto and the corporation executed simultaneously herewith."

Plaintiff urges that the corporate agreement should not be admitted into evidence as it was not contemporaneous with the execution of the note, there being an interval of 41 days between the date of the corporate agreement and the date of the note. It appears, however, from the face of the corporate agreement, that a note was to be given by the defendants, Hickman Short and Ann Short, within 3 days after the value of the listed assets was computed and the approval of the agreement was given by the supplying companies. It does not appear to be contended that the sum of $15,000 was paid and the note executed and delivered, other than pursuant to such agreement.

It is plaintiff's position that the contemporaneous transactions which may be construed with the note, under the rule of Old Second Nat. Bank of Aurora v. Wright, 280 Ill App 73, must be completed on the same day. In this case, however, the corporate agreement clearly discloses why the note was not given upon the date of the corporate agreement and shows that the note could not have been given upon an agreed or specified date, for the date of the note was necessarily determined with relation to the occurrence of described events, i. e., the determination of the value of the listed assets and the obtaining of the agreements to the transfer by other parties as contemplated by the plaintiff and the defendants.

While it may be that the cases of our courts to date have not had occasion to consider instances other than where the note and agreement were executed upon the same date, we believe that the requirement that the instruments be completed on the same day is not always feasible and is unnecessarily strict.

As suggested in various notes in *Words and Phrases,* contemporaneous means so proximate in time as to grow out of, elucidate and explain the quality and

346

character of the transaction, or an occurrence within such time as would reasonably make it a part of the transaction.

In Burke v. Snively, 208 Ill 328 at p 352, 70 NE 327, the court said:

> "The literal meaning of 'contemporaneous' is 'living or existing at the time.' "

In the *Shorter Oxford English Dictionary*, a meaning of contemporaneous is "existing or occurring at the same time." It seems clear under the record that the corporate agreement and the shareholders' agreement, each dated October 20, 1960, were certainly in existence at the time of the execution of the note and we cannot say that they are not to be reasonably considered a part of the transaction and explanatory of its character. Under our *Commercial Code*, chap 26, § 3–119 (Ill Rev Stats 1961), the test is stated that between the obligor and his immediate obligee, the note may be modified or affected:

> ". . . by any other written agreement executed as a part of the same transaction. . . ."

We must consider the question: Under the facts and circumstances of this case, may the plaintiff corporation insist that it is an entity which stands remote and aloof from the matters incident to the whole transaction prior to the date of the note? We find neither evidence nor contention that creditors of the corporation are concerned or affected. Again, there is no claim that it negotiated the note for value to one taking as a holder in due course without notice.

We understand it to be agreed that prior to and on October 20, 1960, plaintiff corporation was owned by 6 shareholders: R. E. Parks, I. L. Parks, Margaret Parks, Gladys E. Parks, and the defendants, Hickman Short and Ann Short. Each of these individuals

joined in executing the shareholders' agreement. As of the date of the hearing upon the issues, they continued to be the only shareholders.

The shareholders' agreement referred to the simultaneous execution of the corporate agreement which was signed by R. E. Parks, as secretary-treasurer, and by Hickman Short, as president, and approved by I. L. Parks, a director. At the time of the hearing the officers of the corporation were I. L. Parks, president, Gladys Parks, vice-president, and R. E. Parks continued as secretary-treasurer.

It seems fair to say that the plaintiff corporation had notice of the details of the transaction as set forth in the corporate agreement and the shareholders' agreement, for not only its officers and directors, but the entire roster of shareholders participated in these contemporaneous agreements initiating the transaction.

In 19 *American Jurisprudence 2d* 672 Corporations, § 1,265, it is said that knowledge of the directors for general management is imputed to a corporation.

In *Limitations of the Corporate Entity*, Walter H. Anderson, 1931, it is said in § 85, p 99, where all stockholders of a corporation enter into an agreement or contract, such agreement or contract may not be repudiated by the corporation. Again, in *Ballantine on Corporations*, 1946 Edition in Sec 126 at p 296, it is said:

> "The contracts of the sole shareholder, or all the shareholders, will bind the corporation in modern law, although not made by authority of the board of directors, since they are the only persons beneficially interested, aside from corporate creditors. If they do not distinguish between corporate business and their individual affairs, or

348

waive formalities established for their benefit, there is no reason why the courts should insist on such formalities. The contract of the owners of all the shares will be regarded as binding upon the corporation if so intended."

Under the facts and circumstances of this case and upon the principles set forth, it seems apparent that the plaintiff corporation had knowledge that the defendants, Hickman Short and Ann Short, were the equitable owners of ⅓ of the note as well as the corporate assets which were determinative of the amount of the note, and that under the several agreements these defendants would ultimately be entitled to be credited with that interest. This ownership interest would appear to be a substantial portion of the amount for which plaintiff seeks judgment and such matters were placed in issue in the answer filed by the defendants and the reply of the plaintiff.

The credit of one-third of the note, referred to in paragraph 1 of the agreement of October 20, 1960, was to be given before assignment of the note to Parks, and, therefore, presumably was to be given by the corporation, plaintiff herein, and the agreement to credit was unconditional.

We conclude that this case comes within the authority of Bogdan v. Ausema, 33 Ill App2d 294, 179 NE2d 401. In that case plaintiff sought to recover upon a note executed by the defendants and the Appellate Court affirmed the trial court in denying plaintiff's motion for summary judgment. Pursuant to a purchase and sale contract, dated October 3, 1958, the defendants paid $1,500 in cash and executed a note in the amount of $2,000 for the balance. The original agreement provided that if the business was subject to the Illinois Sales Tax, a portion of the purchase price should be held in escrow until released by the Depart-

ment of Revenue. In a "rider" executed subsequently to the agreement at a date which does not appear in the opinion, it was agreed that if there was a sales tax assessment which was required to be paid by the defendant, such amount should be deducted from the balance of the note. There were other agreements regarding possession of the premises and promises by the plaintiff to teach and train the defendants in the business. The defendants' answer and affidavit in opposing the motion for summary judgment, set out that the promise to train and teach the defendants was unfulfilled, that the rent free occupancy agreement was not performed, and that there was a sales tax assessment against the company in the amount of $1,000. Plaintiff contended that the affirmative matters set out by the defendants did not constitute a valid defense and that the consideration for the note was the transfer of the business and not the promise to perform the future agreements in the agreement and its rider, that even if the promises constituted consideration for the note, failure to perform them did not cause a partial failure of consideration.

 This opinion considered all or most of the cases cited by the plaintiff in this case and held them not to be determinative of the issues. The court pointed out that the provision in the rider which allowed a deduction from the amount due on the note for sales tax was a defense in the nature of recoupment, and that as a right to reduce or defeat plaintiff's claim arising out of the same transaction, recoupment is a defense which can be raised in an action on a promissory note. The court went on to hold that since the defendants had raised a valid defense on the note, i. e., recoupment, the defense of partial failure of consideration could also be raised against the note. See also Bechtel v. Marshall, 283 Ill 486, 119 NE 619.

350

Plaintiff, in this case, has cited Keller v. Hyland Builders Corp., 38 Ill App2d 209, 186 NE2d 787, but that case expressly distinguishes itself from the Bogdan case.

We accordingly hold that the court did not err in admitting into evidence the shareholders' agreement and the corporate agreement. Neither of the parties, however, undertook to present evidence as to the amount which might properly be found to be due by reason of the note and the several agreements.

The *Negotiable Instruments Act,* (Ill Rev Stats c 98, § 10, 1961), provides that if it shall appear that the consideration has failed in part, the plaintiffs should recover according to the equity of the case, and § 48 of the same Act provides that partial failure of consideration is a defense pro tanto whether the failure is an ascertained and liquidated amount or otherwise. The *Commercial Code,* (Ill Rev Stats c 26, § 3–408, 1961), effective on July 1, 1962, likewise states that a partial failure of consideration is a defense pro tanto.

It accordingly seems appropriate to reverse the judgment of the trial court and to remand the cause to ascertain the rights of the respective parties and to enter a judgment accordingly.

The record discloses evidence that the plaintiff corporation was not licensed to do business in Illinois, and had never paid any franchise or other taxes and fees due under the Statute from a foreign corporation doing business in the State. It appears, however, that at unspecified times and places the corporation had made sales and deliveries of merchandise within the State, and had had salesmen soliciting business in Illinois. Both the motion of the plaintiff to strike the testimony upon this issue, and defendants' motion to dismiss the suit for want of capacity to sue, were taken under advisement by the court. The abstract does not

351

show any ruling upon either motion and there is no finding as to whether the plaintiff corporation was, in fact, engaged in activities which constitute the transaction of business within this State under the law of Illinois.

The authorities submitted by the plaintiff as to the capacity of plaintiff corporation to sue, submitted after oral argument, do not relate to instances where there is evidence that a foreign corporation was transacting business in this State.

The Illinois Statute, relating to corporations, (Ill Rev Stats c 32, § 157.142, 1961), provides that:

> "No corporation required to pay a franchise tax, license fee or penàlty under this Act shall maintain any action at law or suit in equity until all such franchise taxes, license fees and penalties have been paid in full."

■ We conclude that this Statute states a matter of public policy of this State and may be raised by the court on its own motion or at any time during the course of the proceedings. First Trust & Sav. Bank of Kankakee v. Powers, 393 Ill 97, 65 NE2d 377; Jorgensen v. Baker, 21 Ill App2d 196, 157 NE2d 773.

In Indiana Harbor Belt R. Co. v. Green, 289 Ill 81, 124 NE 298, it was held that a foreign corporation which had not complied with the conditions prescribed by Statute could not maintain an action in this State, and that it was error to overrule a motion to dismiss. In Jorgensen v. Baker, 21 Ill App2d 196, 157 NE2d 773, where a foreign corporation was delinquent in the payment of its franchise taxes, it was held that the corporation had no right to commence the action in our courts and an amended motion to dismiss was sustained.

■ If the trial court finds, in further proceedings, that the plaintiff corporation was, in fact, transacting

■■■

business in Illinois without being authorized so to do, the cause should be dismissed.

The judgment of the trial court is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.