ROBERT W. SCHWANER *et al.*, Plaintiffs-Appellees, v. BELVIDERE MEDICAL BUILDING PARTNERSHIP *et al.*, Defendants-Appellants.

Second District   Nos. 2—86—0296, 2—86—0348 cons.

Opinion filed May 18, 1987.

Bradley T. Koch and Kim M. Casey, both of Holmstrom & Green, of Rockford, for appellants.

John F. Early and Rita Farrell Sullivan, both of Early, Collison, Tousey & Regan, of Elgin, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendants, Belvidere Medical Building Partnership and the individual partners, Lester G. Detterbeck, Lawrence B. Irwin, and Andrea D. Hall, appeal from a $91,813.70 summary judgment entered in favor of M. Paul Dommers. We have allowed the parties' motion to dismiss as to all plaintiffs except Dr. M. Paul Dommers, the only plaintiff remaining in the case. Defendants further appeal the denial of their motions to reconsider and for leave to file an amended counterclaim. Plaintiff appeals from the order denying attorney fees. The issues raised on appeal are: (1) whether the trial court erred in granting plaintiff's motion for summary judgment; (2) whether the trial court erred in denying defendants' motions to reconsider and for leave to file an amended complaint; and (3) whether the trial court erred in denying plaintiffs' motion for attorney fees. We affirm in part, reverse in part, and remand.

This action arises from four promissory notes totalling $250,000 given by defendants to four individuals, including plaintiff, M. Paul Dommers, as part of the purchase price for a medical office building

in Belvidere. In 1981, plaintiff and the other partners of the Belvidere Medical and Office Building Partnership executed a written contract for sale of the building to defendants. The contract was negotiated by plaintiff on behalf of the sellers, and Lawrence Irwin on behalf of the buyers, defendants herein. The contract provided, *inter alia*:

"PURCHASE PRICE: The price is $1,300,000.00 payable as follows:

(a) $30,000.00 upon execution of this contract;

(b) The payment of $270,000.00 at the time of closing;

(c) The payment of $1,000,000.00 at the time of closing.

The price allocation for the purchase price is as follows:

(a) Building—$900,000.00;

(b) Improvements—$200,000.00;

(c) Lease Guarantee—$115,000.00;

(d) Finance Guarantee—$85,000.00."

The contract further provided:

"This contract is further contingent upon the SELLER [Belvidere Medical and Professional Building Partnership] providing PURCHASER a second mortgage in the amount of $250,000.00, with interest not to exceed 12% per annum, to be amortized over 29 years, payable monthly, with no loan costs."

The buyers executed four promissory notes in favor of the buyers as security for the $250,000 second mortgage. Each promissory note, including that given to plaintiff, provided the following:

"In case of any default in the payment of any installment, the holder of this note may, without notice, declare the entire balance immediately due and payable, and thereafter said balance shall bear interest at the rate of *17*% per year."

The note was secured by a trust deed for the real estate occupied by the medical building and was personally guaranteed by each one of the buyers.

Further, the note contained the following provision:

"The monthly payments of this obligation shall be abated in the event that a 1980 or 1981 tax bill is issued on the property underlying the Belvidere Medical and Professional Building until such time as the amount of the tax bill or bills is credited. The 1981 tax bill shall be prorated as of July 24, 1981. The undersigned shall use the funds so abated in the payment of said taxes."

Defendants did not receive a real estate tax bill for the year 1981. Lawrence Irwin in his deposition testified that he and the other defendants were told that the medical building, the subject of the

transaction, "was a nontaxed building because it was on the hospital's [St. Joseph Hospital of Belvidere's] land." Eventually in 1983, defendants were apprised of the fact that the building and the underlying real estate were sold for nonpayment of real estate taxes. This information was communicated to defendants two months prior to the expiration of the period of redemption. Defendants then exercised their right to redeem the real estate by paying the entire amount of delinquent real estate taxes plus a substantial penalty. Real estate taxes for the year 1981 were $22,244.16 plus a penalty assessment of $8,010.90. The sellers' prorated portion of the taxes without penalty was $12,431.70.

The other provisions of the sale contract which are the subject of this case are:

"REPRESENTATIONS BY SELLER: The SELLER warrants and represents as follows:

(a) The water, sewer, plumbing, heating and electrical systems in the building and covered corridor on the premises are in working order and the roof is free from leaks;
* * *

CONTINGENCIES: This agreement is specifically contingent upon execution of the following leases with two month security deposits paid in advance on or before the date of closing:
* * *

(b) Paul Dommers' lease of 2,515 square feet at $12.00 a square foot for a five year term, with yearly cost of living increases;

(c) American Institute of Orthomolecular Research, Inc. lease with a personal guarantee of Tom Jaunch of 3,689 square feet at $12.00 a square foot for a five year term, with yearly cost of living increases.
* * *

Failure to meet any of these contingencies renders this agreement null and void and purchaser's deposit or earnest money shall be returned forthwith."

The contract also contained an integration clause. Plaintiff and defendants, through Lawrence B. Irwin, closed on the sale of the building on July 24, 1981. The closing statement provided, *inter alia*:

"Seller hereby warrants and represents that all building expenses incurred on or before the date of closing will be paid by seller. Buyer represents and warrants that they will pay all building expenses incurred after the closing. Seller further represents and warrants that there are no contractual expenses

extending beyond closing."

Contrary to this warranty given at the time of closing, there were outstanding bills on the property in the amount of $16,946.96 owed to Commonwealth Edison, which defendants paid.

On November 14, 1981, defendant, Lawrence Irwin, wrote a letter to plaintiff's attorney informing him that because of the Commonwealth Edison outstanding bills which defendants had decided to pay in $2,000 monthly installments, the monthly installments on the notes would be reduced by a similar amount. According to defendants, this amounted to $0 being owed to plaintiff until the outstanding Commonwealth Edison debt would be discharged. Plaintiff did not respond directly to this letter. On April 25, 1983, plaintiff, through his attorney, sent defendants a letter informing them they were in default of the note, and, therefore, the acceleration clause was invoked and the notes were called.

On August 22, 1983, the now-dismissed plaintiffs, Schwaner, Pavlopoulos, and Scarlatis, filed a complaint in the circuit court of Winnebago County alleging that defendants defaulted on their notes and demanding judgment against defendants. Plaintiff Dommers was added to the action in an amended complaint filed January 20, 1984. On October 6, 1983, defendants filed a three-count counterclaim. Count I of the counterclaim alleged a breach of the sales contract in that, despite plaintiffs-counterdefendants' express warranty that there were no outstanding utility bills at the time of closing, defendants-counterplaintiffs had to satisfy outstanding Commonwealth Edison bills. Defendants-counterplaintiffs also alleged that the building had to undergo major repairs and that they had to pay considerable sums of money for these repairs in contravention to plaintiffs-counterdefendants' contract warranty that various systems in the building were in good working order. Count II of the counterclaim was for misrepresentation or fraud. In count III, defendants-counterplaintiffs alleged that had they been aware of the misrepresentations and the consequential detrimental cash flow, they would not have entered into the transaction, and, therefore, they prayed for a judgment of rescission of the contract. Also, on October 6, 1983, defendants filed affirmative defenses to the original plaintiffs' complaint based on: (1) failure of consideration; (2) the contention that the transaction was either void or voidable as a matter of law; and (3) a right to set off.

On February 14, 1985, plaintiff filed a motion for summary judgment on the amended complaint and on defendants' affirmative defenses and counterclaim. The deposition of defendant, Lawrence Irwin, was incorporated by reference. The motion was supported by

affidavit by plaintiff, Dr. M. Paul Dommers. Defendants filed an answer and accompanying exhibits consisting of the sales contract, the trust deed, the notes, and the leases.

On November 14, 1985, the trial court granted plaintiff's motion for summary judgment on all counts and ordered that plaintiff's counsel submit a draft order showing a computation of the damages, including attorney fees. On December 12, 1985, defendants filed an objection to the proposed judgment order and motions to reconsider and for leave to file an amended counterclaim. Count I of the proposed amended counterclaim for fraud in the inducement included additional allegations regarding certain contingencies contained in the sales contract, specifically the lease with the American Institute of Orthomolecular Research (Orthomolecular). Defendants-counterplaintiffs alleged that Orthomolecular defaulted under the lease agreement soon after the closing, leaving an outstanding unpaid rent under the lease of $209,795. Lawrence Irwin testified in his deposition that Orthomolecular had been a tenant in the building for some time, and it had been agreed that it would sign a new lease prior to closing. Defendant further alleged that since plaintiff-counterdefendant was an officer of Orthomolecular, his representations as to the leases were false and intended to be relied upon by defendants-counterplaintiffs.

Count II of the proposed amended counterclaim addressed plaintiff's lease, specifically the fact that even though he was released from liability by counterplaintiffs after defaulting on his lease, he was still liable for alleged damages he caused to the leasehold premises during his tenure as a tenant. Count III of the proposed amended counterclaim addressed the personal guarantee executed by plaintiff-counterdefendant on the Orthomolecular lease.

On January 17, 1986, plaintiff filed a motion for attorney fees for work connected with the prosecution of defendants' default on the notes.

On March 7, 1986, the trial court entered summary judgment for plaintiff on all counts and denied defendants' motions to reconsider and for leave to file the amended counterclaim and objections to the judgment order. The judgment contained certain setoffs related to the amount of 1981 taxes that could be prorated to the plaintiff. Also, the trial court denied plaintiff's petition for attorney fees. This appeal ensued.

Defendants first contend that the trial court erred in granting plaintiff's motion for summary judgment in that there exist genuine issues of material fact which should be decided by the trier of fact. We agree.

Summary judgment is properly granted only where there is no genuine issue of material fact (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636, 502 N.E.2d 1295, 1297; *Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 119, 469 N.E.2d 1379) and should be granted where the pleadings, exhibits, depositions, and admission on file, together with the affidavits, show that the movant is entitled to judgment as a matter of law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 975, 452 N.E.2d 649). Summary judgment is a drastic measure to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the right thereto. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 604-05, 456 N.E.2d 958; *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 702, 355 N.E.2d 70.) In reviewing the trial court's grant of summary judgment, a court of review must consider all grounds urged and facts revealed in the trial court to determine if a genuine issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741, 415 N.E.2d 434; *United Security Insurance Co. v. Mason* (1978), 59 Ill. App. 3d 982, 984, 376 N.E.2d 653.) Such an analysis requires a review of the entire record. See *Janes v. First Federal Savings & Loan Association* (1973), 11 Ill. App. 3d 631, 297 N.E.2d 255, *aff'd in part & rev'd in part on other grounds* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.

Our review of the record indicates that the trial court erred in granting plaintiff's motion for summary judgment since genuine issues of material fact existed. We agree with defendants' contention that these issues are raised by their affirmative defenses and by their counterclaim. Defendants' main affirmative defenses consist of failure of consideration and right to certain setoffs. (Ill. Rev. Stat. 1985, ch. 110, par. 2—613.) Their counterclaim is rooted in the theory of fraud in the inducement. Notably, plaintiff-appellee in his brief makes the following statement:

> "As a matter of law, Plaintiffs [*sic*] were entitled to the entry of a judgment finding for them and against the Defendants, jointly and severally, as to liability and directing the Defendants to make payment pursuant to the note terms, *unless some or all of the affirmative defenses or causes of action in the counterclaim entitled the Defendants to other relief.*" (Emphasis added.)

Although not specifically cited by defendants, we believe that the

dispute herein must be analyzed consistent with sections 3—119 and 3—306 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1985, ch. 26, pars. 3—119, 3—306). At the outset we distinguish this case from a line of cases which construes the mortgage and the accompanying note as two distinct documents on the ground that these cases did not raise the specific issues presented here by the affirmative defenses and the counterclaim. That line of cases goes back to *Oswianza v. Wengler & Mandell* (1934), 358 Ill. 302, 193 N.E. 123. In *Oswianza* the court held that a note or bond is a distinct promise to pay money. The pledge of real estate to secure that promise is a different and distinct agreement, which ordinarily does not affect the promise to pay, and the holder of the note may discard the mortgage entirely and sue on the note. (358 Ill. 302, 306, 193 N.E. 123.) In 1984 the Illinois Supreme Court in *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488, relying on *Oswianza*, held that a due-on-sale clause in the mortgage was enforceable even though the note secured by the mortgage did not contain such a clause. (101 Ill. 2d 400, 403-11, 462 N.E.2d 488; accord *Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 469 N.E.2d 1379.) The Illinois Code Comment to section 3—119 states: "This subsection reverses this [*Oswianza*] rule in all cases where no holder in due course is involved." (Ill. Ann. Stat., ch. 26, par. 3—119, Illinois Code Comment, at 84 (Smith-Hurd 1963).) Section 3—119 provides in pertinent part:

"As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument." (Ill. Rev. Stat. 1985, ch. 26, par. 3—119(1).)

Section 3—306 provides in pertinent part:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) *all defenses of any party which would be available in an action on a simple contract*; and

(c) *the defenses of want or failure of consideration, nonperformance of any condition precedent*, non-delivery, or delivery for a special purpose." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 26, par. 3—306.

■■ ■ Plaintiff here is the original obligee and is not a holder in due course as defined by section 3—302 of the UCC (Ill. Rev. Stat. 1985, ch. 26, par. 3—302). Therefore, we look at all the transactions which accompanied the making of the note, as reflected in the writing executed contemporaneously with the notes. (See *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 454 N.E.2d 676; *Elsberry Equipment Co. v. Short* (1965), 63 Ill. App. 2d 336, 211 N.E.2d 463.) The Illinois Supreme Court stated in *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94, that "as between the same parties, a note may be affected by a separate *writing*, including an agreement that upon certain conditions the instrument shall be discharged or is not to be paid." (Emphasis in original.) (86 Ill. 2d 188, 201, 427 N.E.2d 94.) The court further stated that under this section the parol evidence rule that prior or collateral oral agreements are inadmissible to contradict the express terms of a written instrument still applies. (86 Ill. 2d 188, 201-02, 427 N.E.2d 94.) We note that in this case we do not need to resort to parol evidence to vary the express terms of the agreements between the parties as these terms apply in the context of the affirmative defenses and the counterclaim.

The Illinois Code Comment to section 3—119 (Ill. Ann. Stat., ch. 26, par. 3—119, Illinois Code Comment, at 84 (Smith-Hurd 1963)) states that this section is in accord with *Bogdan v. Ausema* (1962), 33 Ill. App. 2d 294, 179 N.E.2d 401. The *Bogdan* court held that when an agreement and a rider were executed contemporaneously by the parties to the agreement as a part of the same transaction, and the note represented a deferred payment of a portion of the purchase price stipulated in the contract, any defenses which defendants could assert in an action upon the contract itself are equally available in an action solely upon the note. 33 Ill. App. 2d 294, 298, 179 N.E.2d 401.

■■ ■ In the instant case, defendants raised the affirmative defenses of failure of consideration and rights to certain setoffs. Plaintiff contends that the defense of failure of consideration is meritless as to the defendants in that under sections 3—307(2) and 3—408 of the UCC (Ill. Rev. Stat. 1985, ch. 26, pars. 3—307(2), 3—408) "consideration is presumed." Notably however, these two sections are supportive of defendants' case in that they respectively provide in part:

"When signatures are admitted or established, production of the instrument entitles a holder to recover on it *unless the defendant establishes a defense.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 26, par. 3—307(2).)

And:

"Want or *failure of consideration is a defense as against any*

*person not having the rights of a holder in due course* (Section 3—305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. \*\*\* Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 26, par. 3—408.)

Plaintiff appears to confuse the defense of "want of consideration" with that of "failure of consideration" as involved here. In *Worner Agency, Inc. v. Doyle* (1984), 121 Ill. App. 3d 219, 459 N.E.2d 633, the court discussed extensively the differences between the two concepts:

"Plaintiff maintains that a want or failure of consideration is an affirmative defense under section 2—613 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2—613.) This is true, but it is also apparent that the legislature, like many courts, has fallen into confusion between want of consideration and failure of consideration. These are distinct concepts and lead to quite different results. If there be a want of consideration, there can be no contract and hence no complaint sounding in contract could stand. *Failure of consideration*, on the other hand, *necessarily admits the contract, but then refers to transactions in which consideration was anticipated but did not materialize.* It is then possible to state a cause of action in contract reciting the consideration therefor; and it then becomes the burden of the defendant by means of affirmative defense to establish failure of that consideration. See 17 C.J.S. Contracts sec. 129 (1963); 17 Am. Jr. 2d Contracts sec. 397 (1964)." (Emphasis added.) 121 Ill. App. 3d 219, 222, 459 N.E.2d 633.

When we examine the facts of this case consistent with these principles, we conclude that defendants raised sufficient questions of material fact in regard to the affirmative defense of failure of consideration to warrant reversal of the summary judgment on this point alone. Plaintiff argues that the consideration for the note is the title to the building itself, of which defendants now have possession. The theory that where property constitutes consideration of a note, there can be no failure of consideration does not apply in situations where there is a warranty of the soundness or quality of the property or a knowingly false representation made in regard to it. (*Leggat v. Sands' Ale Brewing Co.* (1871), 60 Ill. 158, 163; *Larson v. Lybyer* (1941), 312 Ill. App. 188, 197, 38 N.E.2d 177, 181.) Our examination of the record

indicates that defendants had to undertake some substantial repairs, and also, they had to satisfy the Commonwealth Edison outstanding bills despite the plaintiff's warranty to the contrary as expressed in the contract.

Next defendants contend that another material issue of fact is present in their affirmative defense with regard to the setoff amount to which they are entitled. Although we recognize that such issues are present, we do not need to consider this argument in view of our disposition.

In their counterclaim, defendants also raise the theory of fraud in the inducement. In order to constitute "fraud invalidating a contract" a representation: (1) must be one of material fact which has been made for the purpose of inducing the other party to act; (2) must be known to be false by the maker, but reasonably believed to be true by the other party; and (3) must be relied upon by such party and acted upon to his damage. (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439, 437 N.E.2d 817; *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93, 379 N.E.2d 1307.) Such fraud in the inducement vitiates all contracts (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 115, 323 N.E.2d 148) and renders them voidable at the option of the injured party (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439, 437 N.E.2d 817; *Bresler Ice Cream Co. v. Millionaires Club, Inc.* (1966), 71 Ill. App. 2d 342, 343, 218 N.E.2d 891; accord *Wilbur v. Potpora* (1984), 123 Ill. App. 3d 166, 462 N.E.2d 734).

In the instant case, in addition to the issues discussed above, defendants claim in their proposed counterclaim and as reflected in Lawrence Irwin's deposition that plaintiff, the principal negotiator on behalf of the sellers, breached the contract regarding the leases. Even though technically the lease with Orthomolecular was in place at the time of the closing consistent with the contingency contained in the sale contract, Orthomolecular defaulted in its lease soon thereafter. From our examination of the record, we agree with defendants' contention that there are sufficient questions regarding these matters to raise a genuine issue of fact. Parenthetically, we observe that plaintiff's counsel made some statements at the hearing on the motion for summary judgment which are noteworthy in the context of our decision:

> MR. EARLY [Plaintiff's counsel]: *The personal guarantee (on the Orthomolecular lease) would be enough, based on his personal guarantee of that lease, to preclude the entry of Summary Judgment in Dr. Dommers' favor against these defendants*, if, in fact, they ever pled it. There is nothing in the

pleadings setting off the personal guarantee of Dr. Dommers on this lease. (Emphasis added.)

In fact, count III of the proposed amended counterclaim contains this allegation. Also, Lawrence Irwin's deposition incorporated by reference with plaintiff's motion for summary judgment contains a discussion of the Orthomolecular lease.

Therefore, we conclude that the trial court erred in granting plaintiff's motion for summary judgment on the note since genuine issues of material fact exist as raised in the affirmative defenses and the counterclaim.

■■ We observe that the Illinois Supreme Court in *Lombard v. Elmore* (1986), 112 Ill. 2d 467, 493 N.E.2d 1063, held that an "alleged breach of [an] agreement cannot serve both to absolve defendant of liability on the note as a failure of consideration, and also as the basis for the recovery of damages for breach of the agreement." (112 Ill. 2d 467, 472, 493 N.E.2d 1063.) Our case has not as yet had a factual adjudication on the merits unlike the situation in *Lombard*. As in *Lombard*, here we have a case where defendants' affirmative defenses and the counterclaim arise from the same allegations of breach of contract by the plaintiff. Therefore, in order to prevent a double recovery at trial, the only issue to be litigated is defendants' liability on the note and the proper amount of setoff as derived from the affirmative defenses and the counterclaim. No separate award on the counterclaim is to ensue.

■■ ■ Next, defendants argue that the trial court erred in denying their motions to reconsider and for leave to file an amended counterclaim. We agree.

The decision as to whether to allow or deny an amendment under section 2—616 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—616) rests within the sound discretion of the trial court. (*Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052; *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 251, 423 N.E.2d 1170.) This decision will not be disturbed on review absent an abuse of that discretion. (*Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052; *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 857, 387 N.E.2d 1272.) Among the factors to be considered in deciding that discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified. *Talas v. Youngstown Sheet & Tube Co.* (1985),

134 Ill. App. 3d 103, 107, 479 N.E.2d 1052; *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377, 437 N.E.2d 774.

Plaintiff argues that the trial court correctly ruled in denying defendants' motion to file an amended counterclaim based on the fact that defendants' motion was not timely. We disagree. We note that the trial court did not give a specific reason for its denial.

Our review of the record convinces us that the proposed amended counterclaim would not cause prejudice or surprise to the plaintiff and that it was timely. The amended counterclaim merely expanded the factual basis regarding defendants' theory of fraud in the inducement. Also, the motion was timely in that it was filed before final judgment, which is consistent with the provisions of the statute. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(c).) The court in *Bailey v. State Bank* (1983), 121 Ill. App. 3d 17, 458 N.E.2d 1326 held that "for the purpose of amending a complaint, no final order precluding amendment of the pleadings is entered in the case until the written order directed by the trial judge's memorandum opinion is actually entered." (121 Ill. App. 3d 17, 24-25, 458 N.E.2d 1326; accord *Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243.) In our case, the motion was filed between the time the trial court ordered plaintiff's counsel to draft the final order and to compute the damages and the time the final order was actually entered. Therefore, we conclude that the trial court abused its discretion in denying defendants' motion to file an amended counterclaim.

Finally, we address plaintiff's contention that the trial court erred in denying plaintiff's motion for attorney fees. We disagree.

Plaintiff concedes that Illinois precedent does not allow for a recovery of attorney fees where the provision for attorney fees is contained in the portion of the note dealing with confession of judgment and the suit is instituted other than by confession of judgment. (*Dowty v. Holtz* (1877), 85 Ill. 525; *Schmoldt v. Chicago Stone Setting Co.* (1941), 309 Ill. App. 377.) We do not see any merit in plaintiff's public policy arguments urging us to overrule prior decisions. Therefore, we affirm the trial court's decision on this issue.

Affirmed in part, reversed in part, and remanded with instructions.

HOPF and WOODWARD, JJ., concur.