METROPOLITAN BANK & TRUST COMPANY, formerly known as METROPOLITAN STATE BANK, Plaintiff-Appellee, *v.* ZEKE OLIVER *et al.*, Defendants-Appellants.

(No. 53769;

First District—April 6, 1972.

Morgan, Lanoff, Cook & Madigan and Scariano & Gubbins, both of Chicago, (John A. Cook, of counsel,) for appellants.

Levy & Erens, of Chicago, (James B. Fadim, of counsel,) for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

In March 1965 the defendant, Zeke Oliver, executed a note to the Metropolitan Bank & Trust Company for $6,088.80 which was secured by a trust deed on his home. Although the bank knew the property was registered under the Torrens system, it recorded the trust deed with the Recorder of Deeds of Cook County. In March 1966 Oliver agreed to sell his home for $8,270.79. His attorney, the defendant Maurino Richton, informed the bank of the impending sale, inquired about the balance due on the mortgage, said that it appeared the sale would be for cash and that the mortgage encumbrance would be paid in full. The bank responded that the current, pre-maturity indebtedness was $4,270.79.

The contract for the sale of Oliver's home provided that the title was to pass by warranty deed and that the $4,270.79 encumbrance was to be deducted from the purchase price. However, before the transaction was closed, Richton and the attorney for the buyers checked the certificate of title and learned that it was free of a mortgage lien. At the closing no deduction was made for Oliver's indebtedness to the bank; the net sale price, $7,373.98, was paid to Oliver in full and the property was conveyed by a quitclaim deed.

Richton had represented Oliver in other legal matters and held a $2,000 judgment note, dated January 3, 1966, for these accumulated services. After Oliver cashed the $7,373.98 check he returned to Richton's office, paid him $2,000 and received the cancelled note. Richton informed Oliver that while his obligation to the bank was not in the form of a mortgage, the money was owed and he had to pay it. The indebtedness was not paid. About four months later Oliver filed a petition in bankruptcy, listed the obligation to the bank as one of his unsecured debts and the debt was discharged.

The bank sued Oliver and Richton. It alleged that they engaged in a course of fraudulent and deceptive conduct which prevented it from recovering Oliver's debt. In a second count it alleged that Oliver gave Richton money to pay the debt but that Richton wrongfully withheld these funds from the bank. The trial court found for the bank and awarded damages of $4,270.79. Oliver and Richton have appealed from the judgment and the bank has cross-appealed. The bank contends that its judgment should be increased to include either the interest which would have accrued until the maturity of the unpaid note, or the interest which had accrued up to the date of the judgment.

The plaintiff bases its contention that the defendants were guilty of fraud upon the written statement of Richton that the mortgage upon Oliver's property would be paid when the property was sold and upon alleged oral statements to the same effect made to bank officials. Although Richton had no recollection of the conversation, an assistant vice-president of the bank testified that he spoke with him in April about the loan, and that Richton and he were to meet at the bank to go over the closeout figures. The meeting never took place.

■■ In an action for fraud and deceit it is incumbent upon the plaintiff to establish that the defendant's misrepresentation was an untrue statement of material fact, made with knowledge of its falsity for the purpose of influencing the other party who relied upon the statement. (*Cibis v. Hunt* (1964), 48 Ill.App.2d 487, 199 N.E.2d 246; *Jorgenson v. Baker* (1959), 21 Ill.App.2d 196, 157 N.E.2d 773.) A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation. *3700 South Kedzie Building Corp. v. Chicago Steel Foundry Co.* (1959), 20 Ill.App.2d 483, 156 N.E.2d 618; *Skidmore v. Johnson* (1948), 334 Ill.App. 347, 79 N.E.2d 762.

However, the bank cites *Carroll v. First National Bank of Lincolnwood* (7th Cir. 1969), 413 F.2d 353, *cert.* denied (1970), 396 U.S. 1003, for the proposition that an action for fraud may exist where the false promise or representation of future conduct is claimed to be the scheme used to accomplish the fraud. It asserts that it was lulled into a false sense of security by Richton's statements and was induced to forego the steps necessary for the collection of its debt or to put a lien upon the real estate before being notified of the bankruptcy proceedings.

■■ The evidence in this case reveals no carefully constructed plan of deceit such as in the *Carroll* case. It appears unlikely that Richton's statements were false when made, for not only did he inform the bank that the mortgage was to be paid upon the sale of the property, but he

communicated this information to the purchasers. He sent them a copy of his letter to the bank concerning the amount of mortgage indebtedness. In the contract of sale made with them it was specified that Oliver was to receive the purchase price minus the mortgage indebtedness which was to be paid to the bank. Richton testified that, although he had a copy of the Torrens certificate of title in his possession, he did not become aware that the bank had failed to register its deed until the time of the closing. The possession of the certificate does not demonstrate that Richton acted fraudulently.

■■■ The bank failed to establish that Richton's statements were made with knowledge of their falsity and for the purpose of deception. Indeed, judging from all the circumstances of the case the bank had no right to rely upon the statements at all. Where one party seeks to hold another liable for false representations the question necessarily arises whether the party acted reasonably in placing its trust in them. In resolving this question Richton's representations must be considered in the light of all the facts of which the plaintiff had actual notice, and also those of which it might have learned had it exercised ordinary prudence. A party is not justified in relying on representations when it has ample opportunity to ascertain the truth of the representations. *Schmidt v. Landfield* (1960), 20 Ill.2d 89, 169 N.E.2d 229.

■■ When Oliver sought his loan from the bank with his home to be used as security, the bank caused a report on the property to be prepared by the Chicago Tax and Title Company. The report stated, in red print, that the property was registered under the Torrens system; it gave the number of the Torrens certificate and the volume and page number where the document could be found. Although the bank had this information in its possession, it failed to register its trust deed with the Registrar of Titles which would have perfected its lien. (Ill. Rev. Stat. 1965, ch. 30, par. 98.) Moreover, a few days prior to the sale of Oliver's home, the bank officer in charge of debt collections discovered the bank's omission and realized its probable effect. He made a notation upon the ledger card which reflected the suspicion that the bank's trust deed was worthless. However, no attempt was made to ameliorate the bank's mistake, either by contacting Richton or by registering the trust deed prior to the closing of the sale. Such conduct does not reflect ordinary prudence. The bank's allegation of fraud was unsupported by the evidence and a decision in its favor on that ground cannot be sustained.

■■ In the second count of its complaint the bank alleged that Oliver left a sum of money on deposit with Richton to pay the obligation to the bank but that Richton failed to do so. Testimony was given by an attorney for the bank who spoke to Oliver early in 1967. Oliver was

purported to have said that Richton paid the obligation to the bank out of the purchase price. This testimony was not admissible as against Richton. Furthermore, in a deposition taken in May of 1967, Oliver stated that the total purchase price was given to him. He used the money to pay Richton for services rendered during a period of years and to pay some of his other creditors. The trial court was correct in concluding that there was insufficient evidence to support a finding on the second count of plaintiff's complaint.

■■ The plaintiff further contends that Oliver's obligation was not discharged in the bankruptcy proceedings as the Bankruptcy Act declares that a discharge in bankruptcy does not release a bankrupt from liabilities arising from "willful and malicious injuries to the * * * property of another." (11 U.S.C.A., sec. 35(2).) Under the Bankruptcy Act willful and malicious injury arises from a wrongful act performed intentionally without just cause or excuse. (*Peters v. U.S. ex rel. Kelley* (7th Cir. 1910), 177 F. 885.) However, such an injury does not automatically occur from every act of conversion without a consideration of the circumstances. *Davis v. Aetna Acceptance Co.* (1934), 293 U.S. 328, 79 L.Ed. 393, 55 S.Ct. 151.

■■ Nearly a month before the sale of Oliver's property was closed, Richton informed the bank of the impending transaction. The bank made no objection. Although it realized the possible consequences from its failure to register its trust deed, it never requested any postponement in the conveyance of the property from Oliver to the purchasers in order to remedy its mistake. Following Oliver's receipt of the purchase price, it made no immediate demand upon him for the portion it claimed. Its previous dealings with him should have put it on notice that Oliver was an uneducated man who might not understand the import of his obligations. Although Richton had informed Oliver that he still owed the bank the unpaid balance of the loan, Oliver testified at his deposition that after paying other debts he simply did not have the money to pay the bank. Judging from all the circumstances of this case it cannot be held that Oliver's conduct amounted to the "willful and malicious" destruction of the bank's property so as to preclude his discharge from the debt under the Bankruptcy Act.

As the judgment must be reversed, there is no need to consider the bank's assertion on its cross-appeal that it is entitled to further interest on Oliver's obligation.

Judgment reversed.

McGLOON, P. J., and McNAMARA, J., concur.