63 Ill. App.3d 920 (1978)
381 N.E.2d 15
NATIONAL REPUBLIC BANK OF CHICAGO, Plaintiff-Appellee,
v.
NATIONAL HOMES CONSTRUCTION CORPORATION, Defendant-Appellant.
No. 77-765.
Illinois Appellate Court  First District (1st Division).
Opinion filed August 14, 1978.
Rehearing denied September 11, 1978.
*921 Defrees & Fiske, of Chicago (Edward J. Griffin and Gary Schuman, of counsel), for appellant.
Paul M. Heller, of Wexler, Wexler & Heller, Ltd., of Chicago, for appellee.
Judgment reversed.
Mr. JUSTICE O'CONNOR delivered the opinion of the court:
National Republic Bank of Chicago (hereafter the Bank or plaintiff) filed a complaint against National Homes Construction Corporation (hereafter NHCC or defendant) alleging that NHCC, with intent to defraud, misrepresented material facts to induce the Bank to continue the payroll funding of one of defendant's minority subcontractors and that as a result plaintiff suffered financial loss. After a bench trial, plaintiff recovered a judgment of $47,036.17 against defendant. Defendant appeals, contending that the trial court's holding is against the manifest weight of the evidence, that rulings on evidence were in error and that plaintiff was not entitled to damages.
Kenneth H. Straub, the Bank's executive vice president, testified that Irwin Hardy, a contractor, came to Mr. Parrillo, the Bank's president, to request a loan to fund the payroll required for his firm's job as a subcontractor of NHCC's federally funded multiple family housing project. Hardy stated that his payroll would be approximately five to seven thousand dollars weekly and he wanted to finance six weeks payroll through plaintiff. NHCC would make a semimonthly payment to him. Hardy provided plaintiff with a copy of his contract with defendant, an uncertified personal financial statement and an uncertified balance sheet and financial statement of his company. Hardy's loan application was discussed at a meeting of the Bank's board. After deciding that the maximum exposure would be thirty to forty thousand dollars, the loan was approved. Hardy would submit a weekly payroll summary for the man-hours worked and moneys expended. The Bank would then advance funds to Hardy's payroll account from which he would draw to make his payroll.
Advances to Hardy's payroll account began in May or June 1972. By July 28, 1972, the total advanced to Hardy was $41,079.91. Hardy received a $20,000 payment from defendant on August 5. The total exposure reached $76,099.12 on September 5, 1972. Hardy received a $20,000 payment on September 8, 1972. No loans were made to Hardy between September 30 to November 10, 1972, because Hardy's liability had exceeded $94,000. Defendant made no payments to Hardy from September 8 to November 10, 1972. Sometime in the first week of November, Parrillo and Straub spoke with Mr. Gleason, a vice president of NHCC, who informed them that Hardy was in trouble because his costs would exceed his contract price by $25,000 to $30,000. Parrillo, *922 Straub and Gleason agreed to meet at the work site on November 9, 1972. At that meeting, Straub stated that plaintiff would not continue to loan money to Hardy unless it could be shown how he would come out on the project. Prior to the meeting, NHCC and Hardy had executed an addendum to their contract which increased Hardy's contract price by $20,000 and NHCC had agreed it would more closely supervise Hardy's work. Hardy was required to establish an office at the site and spend more of his time working on the project. At the meeting, the Bank agreed it would continue funding Hardy based upon that addendum. NHCC also agreed to advance funds to Hardy for "work in place," although Hardy was entitled to a payment only when the building was "under roof." Plaintiff received $45,000 from defendant for Hardy's "work in place."
After the meeting, Straub spoke to defendant's supervisors at the site weekly to obtain information about Hardy's work. Mr. Serafini, an employee of NHCC, told him that Hardy was productive and was properly placing his men. Serafini's statements about Hardy were always affirmative. Serafini indicated that payments to Hardy were just down the road. In late December, Gleason said Hardy breached the contract. There were insufficient funds left for Hardy to complete his part of the work. Defendant made no payments to Hardy from November 12 to late December 1972. When Hardy left the job in January 1973, plaintiff's loss on the loans was $98,956.
On cross-examination, Straub testified that Hardy prepared the sheet summarizing the payments to be received from defendant. Hardy prepared the payroll sheets used to justify the amounts to be advanced by plaintiff. The Bank would lend money on the premise that Hardy would be paid as work was in place; it did not know whether Hardy had paid his employees. Plaintiff did not examine Hardy's payroll records in depth, but made occasional spot examinations through his checking account. When the Bank's officers spoke with Gleason, he told them that Hardy was not making his best effort. On November 9, 1972, Hardy stated that another $20,000 could let him complete his work. In his expert opinion, Gleason said that Hardy could not complete the job. The Bank said it would not advance money to Hardy unless it was paid or assured that NHCC would assist Hardy. Straub was sure that if the Bank did not continue to advance funds to Hardy, defendant would terminate him. Although it was not required to do so, NHCC agreed to pay Hardy $45,000 for work in place. The Bank insisted that it receive that money. Straub had no knowledge of the amount by which Hardy had exceeded his budget. He had no personal knowledge of Hardy's use of manpower in November and December.
Joseph M. Evans, assistant commissioner for the Department of Urban Renewal of the City of Chicago, was assigned to check the project for *923 minority representation. He told Hardy that if he did not comply with the November 9, 1972, memorandum, Evans could not guarantee what would happen. Serafini of NHCC said the general progress of the work was "okay." Evans had no indication from defendant that Hardy was doing poorly until January 1973. Evans' opinion was that the work was progressing well after the November 9, 1972, meeting.
Donald J. MacLauchlan, Jr., was called as an adverse witness pursuant to section 60. At the time of his testimony, MacLauchlan was not employed by defendant. He had been a vice president of National Homes Realty Company in charge of multifamily construction for NHCC. He had no responsibility for the project on which Hardy had worked until August 1973. However, he had signed defendant's revised answers to plaintiff's request to admit facts. He based his answers on a memorandum in defendant's project file. There were no written estimates of the amounts by which Hardy exceeded his budget for the work. When he left defendant's employ, he offered to make himself available at his convenience to aid NHCC in its litigation. His present employer was currently involved in an arbitration proceeding as an adversary of NHCC.
Walter Seidler, the former regional manager of construction for NHCC, was called as an adverse witness by the Bank. He sent letters to Hardy complaining of Hardy's work on the project in September and October 1972. Hardy worked on several buildings at once, rather than completing work on any one building. After the November 9, 1972, meeting, Hardy produced fairly well for approximately four to six weeks. In a deposition, Seidler had stated that Hardy went downhill two weeks after November 9. He did not tell the Bank about Hardy because they did not ask about him. On examination by NHCC's counsel, Seidler stated that Hardy was productive until the end of 1972. The Bank did not ask what per cent of his work Hardy performed. They did not inspect the site. Seidler did not tell Serafini to call the Bank after Hardy's performance began to deteriorate.
Richard Parrillo, president of the Bank, testified that he was familiar with the Hardy loans. The Bank continued to fund Hardy because NHCC was to pay Hardy additional money and supervise him. Two or three times weekly Parrillo called Seidler or Serafini, who told him Hardy was doing well. Serafini's opinion was that Hardy was doing well. Serafini gave the Bank assurances that he had seen Hardy's timesheets and supervised Hardy's men. Hardy had been productive. Parrillo first began having problems with Hardy in the last week of December 1972. He asked for a meeting with NHCC officials in January 1973. At the meeting, they told him Hardy was $90,000 over budget. They said Hardy would be discharged because he could not finish the job.
*924 On cross-examination, Parrillo stated that he saw Hardy's contract with NHCC before he approved the loan. The Bank had no credit check on Hardy. Hardy was not informed of the Bank's maximum desired exposure on his loan. It was very difficult to say what work Hardy had done on any building because the buildings were in various stages of work. Hardy did not give them a work report. He only gave the Bank a payroll report. Parrillo relied on NHCC's expertise concerning the progress of the construction. The Bank had no one who could tell whether work was in place. No one was hired to evaluate the progress for plaintiff.
After plaintiff rested, defendant NHCC called Phillip Montanus, its president, who testified that on November 9, 1972, they made no guarantee to the Bank. NHCC did say it would stick with Hardy, but the Bank was to take its risk. When Straub asked whether NHCC would make good the Bank's losses, Montanus said no. At the November meeting, it was made clear that the amounts of Hardy's budget problems were only estimates. A short time after the meeting, Serafini reported difficulty getting Hardy's men to follow his orders, but Hardy could have done well up to the holidays.
Defendant contends that the trial court's verdict is against the manifest weight of the evidence because the evidence failed to establish that (1) a material misrepresentation was made, (2) the statements of Serafini were statements of fact, (3) the Bank relied on the alleged misrepresentations, (4) the Bank had a right to rely upon the alleged misrepresentations, and (5) the defendant had an intent to defraud.
 1 Six elements must be proved in an action based upon fraud: (1) the misrepresentation must be of a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; and (6) the statement must be material. (Bennett v. Hodge (1940), 374 Ill. 326, 332, 29 N.E.2d 524; Forrester v. State Bank (1977), 52 Ill. App.3d 34, 39, 363 N.E.2d 904; Broberg v. Mann (1965), 66 Ill. App.2d 134, 139, 213 N.E.2d 89.) The proof of each element should be clear and convincing. Racine Fuel Co. v. Rawlins (1941), 377 Ill. 375, 380, 36 N.E.2d 710; Brubaker v. Gould (1962), 34 Ill. App.2d 421, 433, 180 N.E.2d 873.
 2 Defendant argues that the Bank had no right to rely on the alleged misrepresentations of Serafini and Seidler because it had an opportunity to ascertain the truth of the representations and made no attempt to do so. Plaintiff contends that the law is clear that negligence is not a defense to fraud. Although plaintiff's negligence is not generally a defense to an action for fraud, there are situations in which the plaintiff is required to inquire about the representations.
 3 The Bank had experience in making loans to minority subcontractors. *925 In deciding whether it reasonably placed its trust in the alleged misrepresentations, all of the facts of which plaintiff had actual notice and all of those which it might have learned if it had used ordinary prudence must be taken into account. (Metropolitan Bank & Trust Co. v. Oliver (1972), 4 Ill. App.3d 975, 979, 283 N.E.2d 62.) If an ample opportunity to discover the truth of the representations existed, then reliance on them was not justified. (Schmidt v. Landfield (1960), 20 Ill.2d 89, 169 N.E.2d 229, cited in Metropolitan Bank & Trust Co. v. Oliver (1972), 4 Ill. App.3d 975, 979, 283 N.E.2d 62.) On this record, we conclude that the Bank had actual information which should have put it on inquiry and ample opportunity to ascertain the truth of NHCC's representations and therefore it was not justified in relying on the alleged misrepresentations. The Bank's records adduced at trial show that Hardy was not receiving payments from NHCC according to the contract's payment schedule. Indeed, for three months prior to the November 9 meeting Hardy's outstanding loans were more than twice the Bank's desired maximum credit to him. At the November 9, 1972, meeting, Gleason told Straub that he thought Hardy was unable to perform his contractual obligations. Straub stated that the Bank would not continue to fund Hardy unless he knew how Hardy would come out on the contract. The Bank relied on the addendum to Hardy's contract which required Hardy to spend more of his time at the site. Montanus told Straub that the Bank would have to take its risk. NHCC would not make any guarantees. Clearly, the Bank should have made inquiry about Hardy's situation. Furthermore, the Bank did nothing to determine the accuracy of Serafini's and Seidler's statements. No employee was sent to the site. Hardy's records were not examined. The Bank had ample opportunity to discover the truth about Hardy's performance but did not take advantage of that opportunity. The trial court's ruling that the Bank properly relied on the representations was against the manifest weight of the evidence.
Defendant's remaining issues concerning evidentiary rulings and the awarding of damages do not need to be examined because of our decision that the trial court's judgment was against the manifest weight of the evidence. The judgment of the circuit court of Cook County is reversed.
Reversed.
GOLDBERG, P.J., and McGLOON, J., concur.