CENTRAL STATES JOINT BOARD *et al.*, Plaintiffs-Appellees, *v.* CONTINENTAL ASSURANCE COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 82—1485

Opinion filed August 30, 1983.

Ronald A. Jacks and Donald C. Clark, Jr., both of Isham, Lincoln & Beale, of Chicago, for appellant.

Donald R. Harris, Susan M. Carlson, and Elizabeth M. Landes, all of Jenner & Block, of Chicago, for appellees.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Defendant, Continental Assurance Company, appeals from the trial court's judgment which rescinded a pension funding insurance contract, GP-9331, defendant issued to plaintiff, Central States Joint Board and Allied Organizations Staff Pension Plan and Trust. Defendant was also ordered to pay to plaintiffs the sum of $1,651,973.61 which represents the book value, as of May 21, 1982, of plaintiff's pension plan held under the policy. Two issues are presented for review: (1) whether the trial court's decision was against the manifest weight of the evidence and contrary to the law; and (2) whether the trial court erroneously excluded testimony at trial based upon the attorney-client privilege.

The following facts are pertinent to this appeal. In 1958, defendant issued plaintiff a group insurance policy, GP-1013, which provided

for life insurance and retirement benefits for plaintiff's employees. The policy permitted retiring participants to receive their benefits in the form of lump-sum cash payments, or in the form of a monthly annuity purchased out of the pension fund. The cost for the program was based solely on advance funding payouts by plaintiff to defendant. Whenever the amount of monthly payments made by plaintiff was not sufficient to maintain adequate funding of the plan, plaintiff was required to deposit additional large amounts of money. Defendant and plaintiff participated in several meetings during 1971 to discuss the rising cost of the plan due to plaintiff's amendments to the plan to increase participants' benefits. Several participants, upon retirement, elected the lump-sum cash payment in early 1973 requiring plaintiff to pay approximately $750,000 into the plan between May 1972 and April 1973. In June 1972, defendant expressed concern over the depletion of the fund and suggested to plaintiff some ways in which the plan could be changed, including altering the cash payment option. Plaintiff did not at that time, however, agree to change the plan.

On January 28, 1974, Leroy Gebhart (defendant's account representative) met with John Serpico (plaintiff's president), Millard Grauer (an insurance consultant and advisor employed by plaintiff) and Dan Terlap (plaintiff's secretary-treasurer). Joseph B. Cicero, plaintiff's in-house counsel at that time, testified that he was also present at the meeting; however, none of the others verified his attendance. The topic of the meeting was the revision of the pension plan. Serpico testified at trial that there were five changes which he wanted Gebhart to make in the plan, one being that he wanted the cash payment eliminated "because anything that would put a drain on the fund, I wanted to eliminate." The other changes were: eliminating the 2% employee contribution; allowing a widow's pension; making early retirement less attractive; and changing the benefit formula. At trial, Serpico testified that all five changes were effected and that he had not asked Gebhart to draft the new plan so as to eliminate provisions providing for the withdrawal of sums to fully purchase annuities.

On March 12, 1974, plaintiff submitted to defendant a signed application to revise GP-1013 to provide retirement benefits from a plan of group ordinary life insurance with a side fund to a plan of group single premium annuities with a group annuity fund. As the result of this application, defendant issued GP-9331 effective April 1, 1974. The provision for a cash lump-sum retirement payment was deleted. Serpico testified that he read only the first part of the proposed revision to check for changes and skipped Part II entitled "Provisions & Ad-

ministration of the Contract." Paragraph 13 in that section provided that "[a]s of a Participant's Effective Annuity Date, a sum shall be withdrawn from the Fund and shall be applied to purchase the amount of annuity to which such Participant is entitled under the provisions of Part I of this Contract." The former policy also contained this option; however, testimony at trial indicated that no annuities had ever been purchased under it.

Plaintiff contends in its brief, and Serpico testified at trial, that it was not until September 1978 when it received a letter from defendant's account manager regarding a participant's benefits, that it became aware of the annuity purchase provision. However, exhibits included in the record indicate that in August of 1977, Serpico had conveyed to Grauer, the insurance consultant, that he did not want to have annuities purchased, and that Serpico had requested a change of policies to one that did not provide for full purchase of benefits at retirement. Plaintiff likens defendant's ability to withdraw a sum of money out of the fund to purchase annuities to the objectionable cash payment portion of the previous contract, the only difference being that instead of plaintiff's employee getting the lump-sum cash payment, defendant would receive it. After plaintiff inquired as to whether it could sever its relationship with defendant and was told that it could only do so at the penalty provided for in the contract, plaintiff filed this suit in equity for rescission.

After hearing all the evidence and reviewing the numerous exhibits during a bench trial, the trial court found that:

> "*** the plaintiff has established by clear and convincing evidence that the defendant did not comply with the instructions of the plaintiff in connection with the formation of the contract; that the defendant had a fiduciary duty to disclose the material facts, not merely eliminating the lump sum cash payout and inserting a provision to purchase an annuity instead would not resolve the basic problem the plaintiff was concerned with; and that the failure to disclose this information was a fraudulent misrepresentation of material facts known to the defendant at the time they were made and concealed, not disclosed for the purpose of inducing plaintiff to enter into the contract and who, after having done so, was harmed."

The court thereupon entered judgment on behalf of plaintiff rescinding the contract and ordering defendant to transfer the amount of monies ($1,651,973.61) held under the contract without reduction of adjustment for any investment loss, the penalty provided for in the contract.

## I

■ Defendant proffers several arguments in support of its contention that the trial court erred in granting the rescission of the insurance contract. It is well settled that a court of review will reverse the judgment of a trial court, which was in a superior position to evaluate the credibility of witnesses and the weight of their testimony, only where the findings are against the manifest weight of the evidence. (*Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 521, 412 N.E.2d 1378.) After reviewing the record in this case and the applicable law, we conclude that the trial court's findings are against the manifest weight of the evidence and must be reversed.

## A

Plaintiff successfully argued to the trial court that defendant's alleged nondisclosure of the annuity purchase provision resulted in fraudulent nondisclosure of a material term of the contract. Plaintiff claimed that if it had known that this provision was there, it would not have entered into the contract. After defendant was instructed by plaintiff that it wanted to eliminate the cash drain problem, plaintiff claims that defendant should not have included a provision in the new contract which would allow for a lump-sum cash withdrawal to purchase annuities in full. Of course, the cash lump-sum payment direct to retirees was eliminated.

■ In order to constitute fraud which would invalidate a contract, a misrepresentation must be one of a material fact, made for the purpose of inducing the other party to act, must be known by the maker to be false, but must be reasonably believed and must be relied upon by the other party. (*Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93, 379 N.E.2d 1307, *appeal denied* (1978), 71 Ill. 2d 621.) Illinois courts have recognized a cause of action for fraud which consists of concealment of an existing material fact when accompanied by *scienter*, deception and injury. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195, 380 N.E.2d 1040; *Skidmore v. Johnson* (1948), 334 Ill. App. 347, 360, 79 N.E.2d 762, *appeal denied* (1948), 400 Ill. 628.) To establish fraud, the concealment must have been done with an intention to deceive and under circumstances creating a duty to speak. (*Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 1044, 389 N.E.2d 684.) We find nothing in this record to support the trial court's finding of "fraudulent misrepresentation."

The large record in this case does not suggest concealment with intent to deceive. The original policy contained an option to purchase

annuities. Although it is true no retirements took place under this alternative, that was because the cash lump-sum payment provided in the first plan was too attractive. Furthermore, Serpico admitted in his testimony that this was not discussed with Gebhart at the January 28, 1974, meeting and that all requested changes were, in fact, accomplished.

It should also be noted that the record is clear that Millard Grauer, plaintiff's insurance consultant, not only participated in the January 28, 1974, meeting, at which Serpico was present, but also clearly demonstrated his knowledge and understanding of both policies. We believe the record does not establish fraud and that the suggestion of fraud is specious.

## B

Plaintiff claims that defendant had a duty in this case to issue a policy of insurance that comported with the type of coverage requested by it and cites *Swan v. Allstate Insurance Co.* (1967), 89 Ill. App. 2d 205, 232 N.E.2d 491, and *New York Life Insurance Co. v. Rak* (1961), 30 Ill. App. 2d 86, 173 N.E.2d 603, *aff'd* (1962), 24 Ill. 2d 128, 180 N.E.2d 470. These cases are distinguishable, however, because they deal with laymen who had given explicit instructions to the insurers about the type of coverage they desired which the insurers had clearly not complied with. In this case, plaintiff, with the active aid of an insurance consultant and its own in-house counsel, gave explicit directions to defendant in regard to five changes to be made in the pension plan. As we have previously noted, these five changes were admittedly complied with, as plaintiff's own president acknowledged during his testimony; however, plaintiff's theory is that defendant had a duty beyond this to inform it of the annuity purchase provision. Apparently plaintiff, even with its own retained insurance consultant, accepts no responsibility for the contents of the policies.

We recognize that an insurance company bears the duty to exercise good faith and reasonable skill, care and diligence in writing and issuing policies for its insureds. (*Cleary v. Country Mutual Insurance Co.* (1978), 63 Ill. App. 3d 637, 638, 380 N.E.2d 525, *appeal denied* (1979), 72 Ill. 2d 581.) However, we do not conclude in this case that the record supports a ruling that defendant breached this duty or that it fraudulently concealed the contents of paragraph 13, the annuity purchase provision.

The previous contract, which had been in effect from 1958 until the issuance of the disputed policy in 1974, included this identical option. Cicero, plaintiff's in-house counsel, testified without giving spe-

cifics of his advice to his client because of the attorney-client privilege, that he had discussed paragraph 13 with his client; and, that in his conversations with Serpico and others, he gave advice to them concerning the provision for withdrawal of funds to purchase annuities. Grauer, the insurance consultant employed by plaintiff to oversee its pension plans, but whom plaintiff alleged "lacked knowledge regarding the pension policy and had no special expertise in the pension area," was involved in reviewing and discussing the new contract with Cicero and other employees of plaintiff's. The paragraph was in the same type as the other provisions and was one of 17 paragraphs in part II of the contract spelling out the general provisions and administration of the contract.

Plaintiff's application to defendant signed by Serpico on March 12, 1974, indicates that it was plaintiff's desire to revise its retirement benefits "to a plan of Group Single Premium Annuities with a *Group Annuity Fund*" and that plaintiff shall make deposits to the *"Group Annuity Fund"* (emphasis added). Part II of the policy issued provides for "Deposits by Owner" in paragraph 11, a "Group Annuity Fund" in paragraph 12, then the questioned paragraph 13, "Purchase of Annuities," follows. Each of these paragraphs is clear and unambiguous. It is difficult to believe that in considering the references to "Group Annuity Fund" in plaintiff's application, no one on behalf of plaintiff ever concerned themselves with the above-mentioned applicable provisions.

A review of case law involving misrepresentation and concealment, which constitutes fraud, shows that the court must be convinced that the injured party had justifiably relied on defendant's words or silence, and that the right to rely depends upon all of the surrounding circumstances. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 196, 380 N.E.2d 1040; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 141, 213 N.E.2d 89.) Generally, it is only where parties do not have equal knowledge or means of obtaining knowledge of the facts which are misrepresented that a person may justifiably rely on them. (*Kuska v. Folkes* (1979), 73 Ill. App. 3d 540, 544, 391 N.E.2d 1082; *Costello v. Liberty Mutual Insurance Co.* (1976), 38 Ill. App. 3d 503, 508, 348 N.E.2d 254.) A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another. (*Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 1134, 404 N.E.2d 1026, *appeal denied* (1980), 81 Ill. 2d 592, quoting *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 141, 213 N.E.2d 89.) In this case, the contract was reviewed by plaintiff's insurance consultant and counsel; in addition, plaintiff's representative Grauer

testified that he contacted another insurance company to examine defendant's policy to determine if it was competitive. Plaintiff, with an insurance expert and attorney reviewing the proposed revision, had an ample opportunity to determine the contents of the proposed contract.

■ Plaintiff places much weight on the fact that its president, Serpico, testified that he had not read either the former contract or the instant contract in full to discover the annuity provision. Although we are mindful that plaintiff's negligence is not generally a defense for an action for fraud, there are situations where, as here, plaintiff has an obligation to inquire. (*National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 924, 381 N.E.2d 15, *appeal denied* (1978), 71 Ill. 2d 618.) In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not justified. (*National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 925, 381 N.E.2d 15.) In this case, the record clearly established that plaintiff was given ample opportunity to learn the content of its policy.

After reading the record and reviewing the exhibits, *e.g.*, actuarial reports; Grauer's notes of the provisions of GP-1013; his discussion January 4, 1974, about GP-1013 with plaintiff's representative Serpico and Terlap; copies of Schedule A (Form 5500) Insurance Information required pursuant to ERISA (Employee Retirement Income Security Act of 1974, 29 U.S.C.A. sec. 1024 (1975)), it is difficult to place much weight upon plaintiff's contention that it did not know the detailed provisions of either GP-9331 or its predecessor, GP-1013.

In addition, it has been held that insureds have the burden of knowing the contents of their insurance policies and of bringing alleged discrepancies to the attention of the insurer. (See *Foster v. Crum & Forster Insurance Co.* (1976), 36 Ill. App. 3d 595, 598, 345 N.E.2d 49, where plaintiffs were laymen but were charged with knowing the contents of a provision on an endorsement to the insurance policy.) In this case, plaintiff cannot be excused from knowing that the disputed annuity provision was in their contract.

## C

■ Nor do we believe that the evidence in this case supports the trial court's ruling that a fiduciary relationship existed between plaintiff and defendant. Factors to be considered when determining

whether a fiduciary relationship exists includes the extent to which the alleged servient party entrusts the handling of business and financial affairs and reposes faith and confidence in the dominant party. (*Zeilenga v. Stelle Industries, Inc.* (1977), 52 Ill. App. 3d 753, 757, 367 N.E.2d 1347, *appeal denied* (1978), 67 Ill. 2d 596.) The facts of this case establish that the parties were negotiating at arms length and that defendant did not gain influence or superiority over plaintiff so that plaintiff could be considered a servient party. No fiduciary relationship existed.

Because of our decision based upon the foregoing, we need not address defendant's remaining issue.

For the reasons stated above, we reverse the decision of the circuit court of Cook County.

Reversed.

STAMOS and HARTMAN, JJ., concur.