**TEAMSTERS LOCAL 282 PENSION TRUST FUND, Plaintiff–Appellant,**

v.

**Anthony G. ANGELOS, et al., Defendants–Appellees.**

**No. 87–1084.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1987.

Decided Jan. 28, 1988.

Edward J. Boyle, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for plaintiff-appellant.

John Powers Crowley, Cotsirilos & Crowley, Ltd., Chicago, Ill., for defendants-appellees.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

This case is another segment in extensive litigation between the parties. The appellant-trust fund (the Fund) is an employee benefit plan established under ERISA, 29 U.S.C. § 1002. In March 1979, the Fund made a loan of $2 million to the Des Plaines Bancorporation, Inc. (the Bancorporation), a bank holding company. The loan was secured by all the stock of the Des Plaines Bank (the Bank), a wholly-owned subsidiary of the Bancorporation. The Bank provided the Bancorporation with its sole source of income. The defendants-appellees are former officers and directors of the Bancorporation and of the Bank, as well as Jenner & Block, the law firm that represented the Bancorporation and the Bank. In this action, the Fund alleged that the defendants fraudulently induced the Fund to make the loan. The district court granted summary judgment in favor of the defendants on the ground that the Fund did not establish one element of common law fraud—justifiable reliance. We agree with the district court that the defendants are entitled to summary judgment as a matter of law and therefore affirm its judgment.

## BACKGROUND

### A. *Facts*

The circumstances surrounding the 1979 loan have been set forth in detail in several other published opinions dealing with this

matter.[1] We need not, therefore, engage in a long recitation here. It is sufficient to note that the Fund was unaware at the time it made the loan that the Bancorporation was in serious financial difficulty. Two years after the loan was made, the Bancorporation defaulted on its semi-annual loan payments to the Fund. On March 14, 1981, the Bank was closed by federal and state regulatory officials. The Fund was left with an uncollectible loan.

In 1981, several fund beneficiaries brought suit in the Eastern District of New York against the Fund and members of the Fund's board of trustees (the Trustees). These beneficiaries alleged that the Trustees had breached their fiduciary duties under ERISA. This suit was consolidated with a similar action brought by the Secretary of Labor against the Fund and the Trustees. The Fund and the Trustees filed third-party complaints against the defendants in the present suit. The district court in New York dismissed these third-party complaints. After a three-day bench trial on the remaining claims, the district court in New York ruled against the Fund and the Trustees. It found that the Fund and the Trustees had failed "to use that degree of care, skill, prudence and diligence that a prudent man would exercise under the circumstances then prevailing." *Katsaros v. Cody,* 568 F.Supp. 360, 369 (E.D.N.Y.1983), *aff'd,* 744 F.2d 270 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

In February 1984, the Fund brought suit in the Northern District of Illinois against the present defendants. In this action, the Fund raised the same claims that it had asserted in the third-party complaint that was dismissed in the New York litigation. The complaint alleged several violations of the federal securities laws, as well as state common law claims for fraud and negligent misrepresentation. The district court granted the defendants' motion for summary judgment. It held that the action was barred by the judgment of the New York district court under principles of collateral estoppel. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 585 F.Supp. 1401 (N.D.Ill.1984) *(Teamsters I), aff'd in part and rev'd in part,* 762 F.2d 522 (7th Cir. 1985) *(Teamsters II).* In *Teamsters II,* this court held that the New York litigation did not bar the Fund's securities fraud suit because the securities laws do not impose a duty to investigate on an ordinary investor. However, the court affirmed the district court's holding that collateral estoppel barred the Fund from asserting a claim for negligent misrepresentation under Illinois law. Although the court remanded the case for consideration of the Fund's federal securities claims and ruled against the Fund on its claim for negligent misrepresentation, it did not reach the merits of the Fund's claim for common law fraud. *Teamsters II,* 762 F.2d at 531.

On remand, the district court held that the Fund's federal securities action was barred by the statute of limitations. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 624 F.Supp. 959 (N.D.Ill.1985) *(Teamsters III).* The district court also declined to exercise pendent jurisdiction over the Fund's common law fraud claim and dismissed it for lack of subject matter jurisdiction. *Id.* at 965. This court affirmed. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452 (7th Cir.1987) *(Teamsters IV).* It held that the Fund's securities law allegations were subject to the three-year limitations period of Illinois securities law. That period of limitations could have been tolled if the Fund had exercised reasonable care and diligence to uncover the alleged fraud. However, held this court, principles of collateral estoppel prevented the Fund from asserting that it had exercised such reasonable care and diligence; it was bound by the contrary determination of the New York district court in *Katsaros.*

---

**1.** *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 624 F.Supp. 959 (N.D.Ill.1985), *aff'd,* 815 F.2d 452 (7th Cir.1987); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 585 F.Supp. 1401 (N.D.Ill.1984), *aff'd in part and rev'd in part,* 762 F.2d 522 (7th Cir.1985); *Katsaros v. Cody,* 568 F.Supp. 360 (E.D.N.Y.1983), *aff'd,* 744 F.2d 270 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

While *Teamsters IV* was still pending before this court, the Fund filed this new lawsuit. This suit raised the common law fraud claim that the district court had dismissed in *Teamsters III* for lack of pendent jurisdiction. The suit was filed in the Northern District of Illinois and jurisdiction was based on diversity of citizenship. The district court again granted the defendants' motion for summary judgment. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 649 F.Supp. 1242 (N.D.Ill.1986). The Fund now appeals from the judgment of the district court in this latest lawsuit.

### B. *Holding of the District Court*

The district court determined that the Fund was collaterally estopped by the New York district court's findings of fact. These findings established that the Fund, for the most part, failed to investigate before approving the loan and that this failure resulted in its loss. The district court then examined Illinois law on the question of justifiable reliance. It held that, under Illinois law, a party alleging fraud has no right to rely on the representations of the defendant if a reasonable investigation would have uncovered the truth. Given the New York district court's findings of fact, the court held that, in this case, the Fund could not, as a matter of Illinois law, establish justifiable reliance. Because justifiable reliance is an essential element of an action for fraud under Illinois law, the court granted summary judgment in favor of the defendants.

As an alternate ground for granting summary judgment for the defendants, the district court also held that the legal conclusion of the district court in New York barred further litigation in this case. In New York, the court had held that the trustees of the Fund had not acted prudently, as required by the ERISA statute. Here, the district court held that the Fund, in order to establish justifiable reliance under the Illinois common law of fraud, had to establish that its trustees acted prudently. It had already been determined in the New York litigation that they had not acted prudently. Thus, the court determined that the New York district court's legal conclusion that the Fund had not acted prudently collaterally estopped the Fund from bringing this suit.

## DISCUSSION

### A. *The Collateral Estoppel Effect of the New York District Court's Factual Findings*

#### 1.

The Fund contends that it is not collaterally estopped by the New York litigation from asserting justifiable reliance. It argues that the question of whether it had a right to rely on the defendants' alleged misrepresentations is a question of fact for the jury to decide rather than one that the court can address on a motion for summary judgment. It asserts that the New York litigation established only that it violated its ERISA duties by failing to seek expert assistance to evaluate the loan. According to the Fund's interpretation of Illinois law, its duty of inquiry does not require it to seek expert assistance but rather extends only to situations where "the Fund actually was given the opportunity of knowing the truth of defendants' misrepresentations and omissions, and merely closed its eyes to the truth that plainly was before it." Appellant's Br. at 27 (emphasis in original). Thus, the Fund contends, the New York district court's factual findings do not bar the present suit because they establish only what an expert would have discovered had one been employed.

#### 2.

Summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In addition, the court will consider the relevant standard of proof in determining whether the nonmoving party has met its burden under Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The summary judgment standard "mirrors

the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.,* 106 S.Ct. at 2511.

■ The parties agree that Illinois law governs. Under Illinois law, one essential element of fraud is justifiable reliance on the alleged fraudulent statements.[2] Justifiable reliance must be shown by clear and convincing evidence. *National Republic Bank v. National Homes Constr. Corp.,* 63 Ill.App.3d 920, 21 Ill.Dec. 80, 381 N.E.2d 15, 18 (1978). Thus, in order to avoid summary judgment, the Fund must set forth enough facts from which a jury could find by clear and convincing evidence that it was justified in relying on the defendants' alleged misrepresentation. If the Fund failed to meet this burden, then the district court was correct in granting summary judgment to the defendants. *See Vaughn v. General Foods Corp.,* 797 F.2d 1403, 1415 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987) (applying Indiana law) (where the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation).

### 3.

As we have already noted, the parties differ sharply as to whether the plaintiff, in order to show it was justified in relying on the statements of the defendants, must show that it undertook an investigation of the matter. We recognize that the approach of Illinois courts toward the question of justifiable reliance has not been entirely clear. *See Chicago Title & Trust Co. v. First Arlington Nat'l Bank,* 118 Ill.App.3d 401, 73 Ill.Dec. 626, 454 N.E.2d 723, 728–30 (1983). In *Teamsters II,* this

court refrained from harmonizing the Illinois cases on justifiable reliance but indicated that it interpreted Illinois law as precluding a plaintiff from relying on misrepresentations where it has in fact investigated and discovered the truth (or at least discovered a substantial chance that the defendant's statements were false). 762 F.2d at 531 (dicta); *see also Peterson Indus. v. Lake View Trust & Sav. Bank,* 584 F.2d 166, 168 (7th Cir.1978) (applying Illinois law).

The dicta in *Teamsters II* and in *Peterson* certainly does not stand for the broad proposition that a plaintiff never has a duty to initiate an investigation. Indeed, the Illinois Supreme Court has said that the question of whether the plaintiff had a right to rely on a false representation "is to be answered while viewing the representation in light of all the facts of which plaintiff had actual knowledge *as well as those of which he 'might have availed himself by the exercise of ordinary prudence.'"* *Soules v. General Motors Corp.,* 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599, 601 (1980) (emphasis supplied) (quoting *Schmidt v. Landfield,* 20 Ill.2d 89, 169 N.E.2d 229, 232 (1960)). The exercise of ordinary prudence may thus include a duty to investigate:

> In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not justified.

*Central States Joint Bd. v. Continental Assurance Co.,* 117 Ill.App.3d 600, 73 Ill. Dec. 107, 453 N.E.2d 932, 937 (1983) (plaintiff-pension plan could not establish justifiable reliance where plaintiff, along with its insurance expert and attorney, reviewed proposed contract containing alleged mis-

---

2. The elements of an action for fraudulent misrepresentation in Illinois are:
   (1) a false statement of material fact; (2) by a party who knows or believes it to be false; (3) with the intent to induce another to act; (4) action by another in reliance on the statement's truth; and (5) injury to the other re-

sulting from that reliance. *In addition, the injured party must have been justified in relying on the other's statement.*
*Tan v. Boyke,* 156 Ill.App.3d 49, 108 Ill.Dec. 229, 508 N.E.2d 390, 393 (1987) (citations omitted) (emphasis supplied).

representation and had ample opportunity to determine its contents); *see also National Republic Bank*, 381 N.E.2d 15 (bank had no right to rely on alleged misrepresentations of general contractor regarding performance by subcontractor being financed by bank because bank had experience in making loans to subcontractors and had actual information that should have put it on inquiry plus ample opportunity to ascertain the truth of defendant's representations).

■ Thus, we believe that Illinois law imposes upon the plaintiff a duty to investigate when all the circumstances, evaluated in their totality, reasonably require, as a matter of prudence, that an investigation be undertaken. As one Illinois court recently summarized the law in this area:

> In determining whether a party justifiably relies on another's representations, all of the circumstances surrounding the transactions, including the parties' relative knowledge of the facts available, *opportunity to investigate* the facts and prior business experience, will be taken into consideration. *Only* where the parties do not have equal knowledge, *or access thereto,* or where there are other peculiar circumstances inducing the injured party to rely solely on the representations of the other will a person be found to have justifiably relied upon the others' representations. The plaintiffs herein were experienced business persons.... There was ample opportunity for the plaintiffs to conduct their own investigation.... Apparently they chose not to do so. On these facts we do not hesitate to affirm the finding by the trial judge that no actionable fraud could be found.

*Luciani v. Bestor*, 106 Ill.App.3d 878, 62 Ill.Dec. 501, 436 N.E.2d 251, 256 (1982) (citation omitted) (emphasis supplied). In short, the crucial question is whether the plaintiff's conduct was so unreasonable under the circumstances and " 'in light of the information open to him, that the law may properly say that this loss is his own responsibility.' " *Chicago Title & Trust Co.*, 454 N.E.2d at 729 (quoting W. Prosser, *Law of Torts* § 108, at 715 (4th ed. 1971)).

■ The Fund is precluded by the facts established in the federal litigation in New York from asserting that it undertook a reasonable investigation as required by Illinois law in order to maintain an action for fraud. The district court in New York found that the Fund accepted the defendants' representations without question, although information about the Bank's precarious financial position was readily available. After a two-hour presentation by Bancorporation representatives, the Trustees voted unanimously to approve the loan. *Katsaros*, 568 F.Supp. at 364. Although the Trustees were told that $1.5 million of the loan proceeds would be used by the Bancorporation to repay outstanding loans, they made no attempt to contact the prior lenders or to ascertain the history of the prior loans. *Id.* at 369. The Fund made no efforts to evaluate independently the information set forth on the financial statements given to it by the Bancorporation representatives. Had the Fund performed a proper analysis of the financial statements provided by the Bancorporation, it would have discovered that "[n]either the Bank nor Bancorporation had ever earned the amount of money needed to service the debt...." *Katsaros*, 744 F.2d at 276. As the New York district court summed up the situation:

> Here, the manner in which the loan to Bankcorporation was proposed and presented was designed to discourage inquiry into the merits. Urgency and speed overrode the need for calm deliberate inquiry and discussion. Colton apparently attended the meeting to advise the Board members on other matters on the agenda. No Trustee asked him to express his opinion on the advisability of making the loan. At any rate, he did not think that he was qualified to express an opinion with relation to the financial statements of Bankcorporation and the Bank. The Trustees considered only the information and representations given by the borrowers, as presented by Angelos and Howe.

> An independent investigation would have disclosed that it would have been imprudent to make the loan based on the

financial statements of Bankcorporation and the Bank. The sole source of income of Bankcorporation was the earnings of the Bank. An analysis of the financial statements by an expert would have revealed [that the Bank was in severe financial trouble.]

*Katsaros,* 568 F.Supp. at 367 (footnote omitted) (citation omitted).

To the extent that the plaintiff did undertake an investigation, these efforts were hardly those of a reasonably prudent trustee engaged in a sophisticated loan transaction. Certainly, when one does undertake to investigate, one must act with reasonable prudence in the conduct of that investigation. The district court in New York noted that, after approving the loan, two Trustees visited the Bank in Chicago. They also viewed certain Chicago real estate put up as partial security for the loan. This visit took place the day before the closing was scheduled. *Id.* at 364. Moreover, they did not attempt to secure an appraisal of the Bank stock, which was the primary security pledged for the loan, or of the property. *Id.* at 368. Although they visited the real estate, they did not even seek a title report. Had they done so, they would have discovered that one of the real estate parcels was subject to a tax delinquency which resulted in it being seized and sold the same day as the loan closing. *Id.* at 369. This meager "investigation" was not a reasonable one for these trustees in making such a loan.[3]

These facts clearly establish, as a matter of law, that the Fund did not act with ordinary prudence in making this loan. A prudent trustee would not have made a $2 million loan without investigating the financial soundness of the debtor, whether or not such an investigation required the assistance of an outside expert.

B. *The Collateral Estoppel Effect of the New York District Court's Legal Conclusion*

In response to the district court's alternate holding, the Fund argues that the fiduciary obligations of an ERISA trustee greatly exceed the standard of care imposed under Illinois common law. Therefore, the Fund contends that the New York district court's holding that the Fund had violated its duties under ERISA did not determine the issue in this case of whether the Fund's reliance on the alleged misrepresentations of the defendants was unreasonable.

We disagree with the Fund's characterization of the effect of the New York district court's holding on the present litigation. The district court in New York decided that the Fund's "failure to seek outside counsel when 'under the circumstances then prevailing ... a prudent man acting in a like capacity and familiar with such matters' would seek outside counsel, [was] imprudent and a violation of ERISA." *Katsaros,* 568 F.Supp. at 367 (quoting 29 U.S.C. § 1104(a)(1)(B)). This same standard, "ordinary prudence," governs the present inquiry under Illinois law with respect to justifiable reliance. *See Soules,* 402 N.E.2d at 601. The New York district court held that a "trustee unfamiliar with an unusual or difficult investment decision is charged with making an 'independent inquiry into the merits of particular investments.... A trustee's duty to make an independent investigation includes the negative obligation of not relying on the representations, predictions and hopes of a borrower.'" *Katsaros,* 568 F.Supp. at 367 (citations omitted). This duty, which the New York district court held the Fund violated, is precisely its duty under Illinois common law.

In determining that the Fund violated ERISA, the New York district court held that the Fund did not act prudently. *Id.* In *Teamsters IV,* we held that the New York district court's conclusion that the Fund did not act prudently precluded the Fund from relying on the doctrine of eq-

---

**3.** This case is quite distinguishable from *Citizens Sav. and Loan Ass'n v. Fischer,* 67 Ill.App.2d 315, 214 N.E.2d 612, 616 (1966), where the intermediate appellate court held that homeowners were not required to investigate the validity of the title of their purchase when they were "innocently, specifically assured, that they needed no other professional counsel."

uitable tolling of the statute of limitations. Now, in this case, we hold that the New York district court's conclusion that the Fund did not act prudently precludes the Fund from asserting, in an action for common law fraud, that it had the right to rely on the representations of the defendants. As the Supreme Court said emphatically in *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931), it is important "that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."

### Conclusion

The findings of fact and the conclusions of law of the New York district court establish that the plaintiff did not act prudently. It cannot raise this matter again in this litigation. Therefore, it cannot establish fraud under Illinois law. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.