# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3092

GLEN HEFFERMAN,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF ILLINOIS
COMMUNITY COLLEGE DISTRICT 508,
and DAN DAVIS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 794—**Harry D. Leinenweber**, *Judge.*

ARGUED MAY 24, 2002—DECIDED NOVEMBER 8, 2002

Before POSNER, MANION, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Glen Hefferman was the first white basketball coach in approximately 30 years at the majority African-American Malcolm X Community College (Malcolm X). After working for almost seven months without receiving any pay, Hefferman brought this action. He sued both Dan Davis, the Malcolm X athletic director, claiming that Davis had defrauded him, and the Board of Trustees of Illinois Community College District 508 (City Colleges), alleging that the City Colleges had violated both the substantive and the anti-retaliation provisions

of the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.*, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. After a four-day trial, the jury returned a verdict in favor of Hefferman on his substantive FLSA claim against the City Colleges and his fraud claim against Davis. It found in favor of the City Colleges on Hefferman's Title VII race discrimination claim and his FLSA retaliation claim. Both defendants filed post-verdict motions. The district court rejected the City Colleges' motion, but it granted Davis's motion for judgment as a matter of law on Hefferman's fraud claim. On appeal, Hefferman challenges the judgments against him on both the fraud and Title VII counts. We affirm in part and reverse in part.

## I

Hefferman first applied for a coaching position at Malcolm X in 1997. He did not get the job that time, but in March 1999, Davis contacted Hefferman to offer him another opportunity for employment with Malcolm X—this time as the head basketball coach. Davis also told Hefferman that beginning in the fall he could teach physical education as part of the Malcolm X faculty. The news of Hefferman's hiring was big enough to make the April 4, 1999, issue of the *Chicago Tribune*, which specifically stated that Davis had invited Hefferman to apply for the head coach position and that Hefferman had "accepted a job at Malcolm X College, where he will be merely the school's fourth head coach in four years."

Hefferman filled out the paperwork for the coaching position, including a tax form and a job application, and Davis instructed him on how to submit similar paperwork for the teaching job. At Davis's request, Hefferman began his coaching duties immediately. He remembers Davis saying, "Go get 'em. Let's get started." Hefferman understood that he would be paid for the coaching work he would be doing.

At trial, Davis testified that he could not have hired Hefferman because as athletic director he did not have that authority. He maintained that he said only that he would recommend Hefferman for the position. He also testified that there was no head coach position available, only a position as part-time bench coach, and that he did not promise Hefferman a teaching position in the physical education department. Nevertheless, in evaluating a ruling on a motion under FED. R. CIV. P. 50, we must view the facts in the light most favorable to Hefferman, as the non-moving party. Hefferman testified that Davis personally assured him that as athletic director, Davis had the authority to hire him.

It is unclear whether Hefferman filled out an employment application in March. The application in the record for the basketball position is dated August 27, 1999. The only evidence in the record of an earlier application comes from Hefferman's testimony, in which he said that he filled out two applications in the spring: one in March for the head basketball coach position, and another in April for a teaching position.

Regardless of whether Hefferman was formally hired by Davis, the parties do not dispute that Hefferman began work at Malcolm X in March 1999 and fulfilled the duties of the head coach. Between late March and early October, Hefferman recruited players, supervised summer workouts and formal practices, and coached players in leagues and tournaments. Although at trial Davis emphasized that Hefferman was volunteering to ensure his future success as a Malcolm X coach, counsel for Davis conceded at oral argument in this court that Hefferman should have been paid for his work during that period and emphasized that, in his view, only bureaucratic delays prevented Hefferman from receiving timely pay.

Hefferman also testified before the jury that Davis knew that there were no funds available for the 1999-2000 season to pay a bench coach's salary. Despite the fact that he was not receiving any money, Hefferman continued to coach during the spring and summer because he wanted the promised fall term physical education teaching position. He did not do so, however, without complaint. To the contrary, Hefferman frequently protested to Davis about his lack of pay. Davis initially responded by citing payroll paperwork problems and later evaded all of Hefferman's questions. Finally, Davis responded to Hefferman's complaints with racial slurs. Hefferman testified that Davis (who is African-American) stated, "I've never had these problems from a black coach," and then later said, "I knew I shouldn't have hired a white guy."

On October 19, 1999, Hefferman complained to Davis for the last time. He told Davis that he would not continue to coach unless he was paid. Davis responded that Hefferman was owed no money for his preseason work. Hefferman left for the day and never returned. Davis then installed Dan Crosby, who had been working as Hefferman's unpaid assistant, as the new coach at Malcolm X. Crosby is African-American.

After Hefferman filed a discrimination complaint, City Colleges forwarded him two checks that had been cut prior to his lawsuit, totaling approximately $3,600. But Davis and Hefferman could not agree on the amount Hefferman was owed. When Hefferman told Davis that he had worked far more time than the document described and was owed more, Davis responded, "You either take this or you get nothing at all." Hefferman chose nothing, and the case proceeded.

The jury returned a verdict in favor of City Colleges on Hefferman's claims of race discrimination and FLSA

retaliation. It found in Hefferman's favor on his FLSA claim for unpaid minimum and overtime wages and on his fraud claim, awarding Hefferman $10,562 on the FLSA claim and $52,526 in compensatory damages and $75,000 in punitive damages on the fraud claim.

The larger part of Hefferman's verdict disappeared, however, when the district court granted Davis's motion for judgment as a matter of law and vacated the jury's verdict. The court found that a claim of fraud could not be sustained under Illinois law because Davis had not made a false statement of material fact and Hefferman's signed job application prevented him from relying on any false oral statements or promises Davis may have made. Hefferman now appeals the adverse Title VII jury verdict and the district court's judgment on his fraud claim.

## II

We begin with Hefferman's claim that the district court erred in granting the motion for judgment as a matter of law on the fraud claim against Davis. The district court based its decision on its finding that the evidence, even taken as it had to be in the light most favorable to Hefferman, did not satisfy the elements of common law fraud. Under Illinois law, to establish fraud a plaintiff must prove the following elements: "(1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 536 (Ill. 1989) (quotations and brackets omitted); see also *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000).

According to Hefferman, Davis made two types of false statements or intentional misrepresentations. First, Davis

told Hefferman that he would be paid for all his coaching work beginning in May, receiving the salary of a full-time head coach rather than a volunteer or part-time bench coach. Second, Davis told Hefferman that he would also be appointed to a full-time academic teaching position as a physical education instructor. The district court found that while Hefferman may have offered sufficient evidence that Davis made the second statement, he failed to prove that the first statement was false because Hefferman was actually hired as a coach and there was "no evidence that Davis did anything to try to keep him from getting paid." Instead, the court thought, the failure was the result of a "paperwork snafu."

In reviewing a grant of judgment as a matter of law, we must examine the entire record to determine whether sufficient evidence was offered to support the jury verdict. *Shank v. Kelly-Springfield Tire Co.*, 128 F.3d 474, 478 (7th Cir. 1997). And, as we said earlier, we must view the record in the light most favorable to Hefferman, giving particular deference to the jury's findings. *Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 706-07 (7th Cir. 1999). Guided by this standard, we conclude that the district court should not have granted Davis's Rule 50 motion. Whether Hefferman was hired as a coach was not disputed at trial, but the type of coaching position he held was hotly disputed. Davis insisted that he only recommended that Hefferman should be hired as a part-time bench coach, while Hefferman claimed that Davis promised him a head coach position and installed him in the job right away. This distinction is important because the position for part-time bench coaches did not begin until October, while the head coaching job is a full-time, year-round position. Hefferman's own testimony and the *Chicago Tribune* article provide ample evidence to support the jury's conclusion that Davis falsely told Hefferman he was hiring him immediately to a full-time,

paid, head coach position, when in reality he intended that Hefferman would not be paid for seven months. While the district court was persuaded by Davis's argument that the delay in paying Hefferman was due solely to a "paperwork snafu," the jury was not required to believe this explanation. Nor does the fact that City Colleges in early 2000, well after Hefferman had already threatened to sue, offered him $3,600 in "payment for services," prove that Davis's statement in March 1999 that Hefferman would be paid at that time was not intended to be false. (It may be worth noting that the offer, which appears to have been some kind of settlement effort, was less even than the minimum wage and overtime FLSA award that the jury ultimately found merited, but no one mentioned this fact on appeal.)

Davis's other arguments for casting aside the jury's verdict likewise also can prevail only by ignoring evidence favorable to the jury's verdict. Davis finds it odd that the jury believed Hefferman reasonably believed that he was going to be paid when he did not complain about the lack of a paycheck to anybody other than Davis himself. Davis urges that the jury should instead have accepted his own testimony and that of another City Colleges employee, to the effect that Hefferman knew he would not be paid until October. But it is the unique province of the jury to assess credibility questions, *Mathur v. Board of Trs.*, 207 F.3d 938, 941 (7th Cir. 2000), and it must have found Hefferman's account of the March conversations more convincing than Davis's. Although it was not required to do so, the jury reasonably could have found that Davis intentionally misled Hefferman to induce him to perform preseason duties without compensation—duties that Davis would otherwise have had to perform personally. In sum, Hefferman produced enough to satisfy the first element of a fraud claim.

The district court also based its ruling on a finding that Hefferman could not prove that he justifiably relied upon any of Davis's false statements. The sole ground the court offered for this conclusion was an employment application signed by Hefferman in August 1999. The application provided, under the heading "READ THIS SECTION PRIOR TO PROVIDING SIGNATURE BE-LOW" that "[a]n offer of employment by any City Colleges employee, administrator or official is contingent upon final approval by the Board." The court reasoned that Heffer-man's awareness of this provision meant he could not reasonably rely on Davis's representation that he could hire him as a coach and physical education teacher.

Illinois law does not permit a plaintiff to ignore available evidence and then claim that she justifiably relied upon a defendant's verbal misrepresentations. *Central States Joint Bd. v. Continental Assurance Co.*, 453 N.E.2d 932, 936 (Ill. App. 1983). If a plaintiff is a competent, literate adult, then she must read available documents. *Cf. Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 547 (9th Cir. 1996) (applying similar rule under Oregon law); *Laborers' Pension Fund v. A&C Envtl., Inc.*, 301 F.3d 768, 781 (7th Cir. 2002) (unreasonable not to read documents before signing them).

While these legal principles are well established, the question we must consider is whether they apply to Hefferman's situation. Hefferman argues that they do not, and cannot, for the simple reason that the application on which the district court relied was signed months *after* he entered into his agreement with Davis, and thus it could not have alerted him to the scope of Davis's authority *before* that agreement was concluded. Specifically, Hefferman signed the application on August 27, 1999, five months after Davis misrepresented to him that he did in fact have authority to hire him. In between those dates, in reliance on Davis's word, he spent countless hours

recruiting players, supervising workouts, and coaching summer leagues. The fact that after performing all this work, Hefferman may have learned that Davis had deceived him does nothing to make his prior reliance on Davis's fraudulent statements unreasonable.

Davis counters that Hefferman filled out an employment application in late March or early April that contained an identical disclaimer, and that this therefore defeats any justifiable reliance. Hefferman did testify that he filled out a tax form and a job application at Davis's behest when he commenced his employment with Malcolm X. Davis claims that this job application was a standard City Colleges application form and therefore necessarily included a disclaimer. But Hefferman testified that he did not know if the form was official, and neither Davis nor City Colleges offered any such application into evidence at trial. This gap is fatal to Davis's position. The jury could have found it suspicious that Davis and City Colleges, the keepers of Hefferman's entire employment file, failed to produce an application that could have been so helpful to the case. It may well have concluded that the form was in fact non-standard.

Reviewing all the evidence in the record, we conclude that a rational jury could have found that Davis made false statements of material fact to Hefferman in March and April 1999, and that Hefferman justifiably relied on those statements at the time. (It is true that after signing the application in August, Hefferman could no longer allege justifiable reliance. Davis does not argue, however, that the jury improperly awarded damages incurred after that date. And it is obvious that Hefferman devoted considerable time to his duties at Malcolm X before August 27, entitling him to more than nominal damages.) We therefore reverse the district court's grant of judgment as a matter of law and remand for entry of judgment on the jury verdict.

### III

Hefferman also appeals the verdict against him on his race discrimination claim, arguing that the jury was misinstructed on the applicable law. For the first time at argument, City Colleges argued that Hefferman's failure to articulate his concern with the jury instructions amounted to a waiver of this point. We need not decide this waiver (or, more properly, forfeiture) issue, as City Colleges too has forfeited this point by presenting it too late. *Quinn v. Neal*, 998 F.2d 526, 530 n.4 (7th Cir. 1993).

This court will look at the jury instructions as a whole when determining whether they informed the jury of the applicable law. *Molnar v. Booth*, 229 F.3d 593, 602 (7th Cir. 2000). There is no "idealized set of perfect jury instructions," *Knox v. Indiana*, 93 F.3d 1327, 1333 (7th Cir. 1996), but the instructions must be correct statements of law and supported by the evidence, *Jaffe v. Redmond*, 51 F.3d 1346, 1353 (7th Cir. 1995). If a misleading instruction has prejudiced a party, then the appropriate remedy is a new trial. *Humphrey v. Staszak*, 148 F.3d 719, 723 (7th Cir. 1998).

The instruction about which Hefferman is complaining reads, in its entirety, as follows:

> In order to prevail on this claim, Hefferman must prove each of the following facts by a preponderance of the evidence: First, that he was fired from his basketball coaching position at Malcolm X or that he was denied a physical education teaching position; and second, that his race was a substantial or motivating factor that prompted the City Colleges of Chicago [to] fire him or deny him the physical education teaching position. It is not necessary for Hefferman to prove that his race was the sole or exclusive reason. It is sufficient if Hefferman proves that his race was a determinative consideration that made a difference

in the City Colleges of Chicago's decision to fire him from his coaching position or to deny him a physical education teaching position. However, the law allows an employer substantial scope for the exercise of its business judgment in employment actions. An employer has the right to make business decisions even if its decisions are mistaken or poorly founded as long as it does not make its decision on a prohibited basis. *A jury must not second guess an employer's decision. Your task is to determine whether the Defendant discriminated against Hefferman on the basis of his race when it did not hire him for the position he was seeking.* If you find that the hiring decisions were the result of valid business considerations, then Defendant's decisions did not violate the law.

Hefferman objected specifically to the italicized portion of the instruction. He argues that the jury instructions were confusing and contradictory because they failed to frame the issues in the disjunctive. Because Hefferman advanced two theories of discrimination, he argues, the jury should have considered separately whether City Colleges discriminated against him either by firing him from his coaching position or by not hiring him to a faculty position. The italicized portion of the instruction asked the jury to consider only the failure to hire theory, and it is therefore likely that jurors may have believed that the decision to terminate Hefferman was racially motivated, but that they should nonetheless rule for City Colleges under the instruction.

We are not persuaded. Twice the same instruction stated that the jury should consider both the firing and the failure to hire charge. Both sides presented a great deal of evidence and made clear in their arguments that Hefferman was advancing both theories. These instructions are nothing like those in *Wilk v. American Med. Ass'n*, 719 F.2d 207, 225 (7th Cir. 1983), a complex anti-

trust case upon which Hefferman relies, where the jury was given no guidance on the kinds and amount of misconduct in which the defendants needed to participate to be found liable. When we consider the present instructions as a whole, as we must, see *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1051 (7th Cir. 2000), we think it unlikely that the concluding sentences of the race discrimination instruction so thoroughly confused the jury that it would ignore the preceding sentences and several days of testimony by failing to consider whether race was the motivating factor in terminating Hefferman from his coaching position.

## IV

In conclusion, we find no reversible error in the instructions the jury was given on the Title VII claim, and that sufficient evidence supports its findings on all counts before it. We therefore AFFIRM its verdict in favor of the defendant City Colleges on Hefferman's Title VII claim. We REVERSE the district court's grant of judgment as a matter of law on the fraud claim and REMAND for entry of the jury's verdict. In light of the disposition of this case, the motion to strike the reply brief is DENIED, and the motion to correct an oral answer is DENIED as moot. Each party will bear its own costs on appeal.

A true Copy:

     Teste:

 

                _____
                *Clerk of the United States Court of Appeals for the Seventh Circuit*